# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | : : : : | Master File:    07-mc-0014 (RMU) |
| | : | Member Cases: |
| | : | 06-cv-483:   *Sloan et al. v. United States* |
| | : | 07-cv-050:   *Gurrola et al. v. United States* |
| | : | 07-cv-051:   *Cohen v. United States* |
| This Document Relates To: ***Cohen v. United States*** | : : : | 06-cv-11459: *Belloni v. Verizon Commc'ns* |
| | : | MDL Docket No. **1798** |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
## PRELIMINARY INJUNCTION MOTION

Michael A. Bowen
Attorney Bar Number: 1016965 (Wis.)
Zhu (Julie) Lee
Attorney Bar Number: 1032454 (Wis.)
Isaac J. Morris
Attorney Bar Number: 1053535 (Wis.)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee WI 53202-5306
Telephone: (414) 271-2400

Michael D. Leffel
Attorney Bar Number: 464721 (D.C.)
FOLEY & LARDNER LLP
150 East Gilman Street
Madison WI 53703-1481
(608) 258-4258

Direct Inquiries to:
Michael A. Bowen
Telephone: (414) 297-5538
Facsimile: (414) 297-4900
E-mail: mbowen@foley.com

**Attorneys for Plaintiff Cohen**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

I. PLAINTIFF ENJOYS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CLAIM FOR ATTORNEY'S FEES UNDER THE COMMON FUND DOCTRINE. ............................................................................... 1

    A. Because the Government has Consented to Suit in Tax Refund and Administrative Procedure Act Cases, Sovereign Immunity is no Bar to a Common Fund Attorney's Fees Order Relating to Money Owed to Fund Beneficiaries. ..................................................................................... 1

    B. The Government's Failure to Recognize its Burden of Proof on the Causation Issue Combine with Logic and Common Sense to Establish Ample Probability of Success on the Merits of Plaintiff's Claim. ............ 5

II. BECAUSE THE COMMON FUND DOCTRINE CALLS FOR PAYMENT FROM THE BENEFICIARIES' FUNDS, THE POSSIBILITY THAT ATTORNEY'S FEES MIGHT (OR MIGHT NOT) BE AVAILABLE FROM THE GOVERNMENT DOES NOT DIMINISH THE RISK OF IRREPARABLE INJURY CONFRONTED BY PLAINTIFF. ......................................................... 7

III. THE REAL WORLD LOSS RISKED BY MR. COHEN FAR OUTWEIGHS THE THEORETICAL ACCOUNTING COST CLAIMED BY THE GOVERNMENT. ............................................................................................. 9

IV. THE REQUESTED PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST. ........................................................................................ 11

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) .................................................................. 4, 8

*Cohen v. United States*, Case No. 2:05-CV-1237-RTR (E.D. Wis. Docket No. 12) ................ 6

*Consolidated Edison Company v. Abraham*, 271 F. Supp. 2d 104 (D.C. Cir. 2003) ............... 2

*Consolidated Edison Company v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006) ......................... 1-3

*Consolidated Edison Company v. Richardson*, 233 F.3d 1376 (Fed. Cir. 2000) .................... 2

*FHA v. Burr*, 309 U.S. 242 (1940) ...................................................................................... 3-4, 8

*Officemax, Inc. v. United States*, 2006 U.S. App. LEXIS 8294 (6th Cir. March 30, 2006) ..... 6

*Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996) ............................................................. 5

**Statutes**

5 U.S.C. § 702 ........................................................................................................................ 3-4

28 U.S.C. § 1346(a)(1) .............................................................................................................. 3

Administrative Procedure Act .............................................................................................. 1-2, 4

Economic Stabilization Act, § 209 ............................................................................................. 2

Economic Stabilization Act, § 210 .......................................................................................... 1-2

MILW_2173083.1

**ARGUMENT**

I. **PLAINTIFF ENJOYS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS CLAIM FOR ATTORNEY'S FEES UNDER THE COMMON FUND DOCTRINE.**

    A.    **Because the Government has Consented to Suit in Tax Refund and Administrative Procedure Act Cases, Sovereign Immunity is no Bar to a Common Fund Attorney's Fees Order Relating to Money Owed to Fund Beneficiaries.**

The government objects first that Mr. Cohen did not begin his principal injunction brief with a discussion of this Court's "jurisdiction" to entertain the motion. (Government's Brief, p. 3) This is odd. The Court's subject matter jurisdiction over the tax refund claim has already been thoroughly briefed. Mr. Cohen's principal brief directly engages the government's sovereign immunity objection, which is apparently what the government is referring to when it questions the Court's "jurisdiction" over this particular motion. In essence, the government is contending that Mr. Cohen should have anticipated the cases the government would eventually cite in support of that position and preemptively distinguished and responded to them so that the government could make its argument and rehabilitate it at the same time. (*Id.*) That position is (to say no more) baffling.

Had Mr. Cohen engaged in such a prodigy of divination, moreover, he still would not have foreseen the government's reliance on *Consolidated Edison Company v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006). (Government's Brief, pp. 5-6) The claimants in *Con Ed* sought attorney's fees under the common fund doctrine from both the government itself and from third-party beneficiaries of the fund in litigation over excess charges for oil under § 210 of the Economic Stabilization Act. The *Con Ed* court recognized that sovereign immunity would be no obstacle to such an award against fund beneficiaries after the funds the government owed them had been distributed to them. *Con Ed*, 445 F.3d at 448-49. The court then said that an order

1

directing attorney's fee payments before distribution – that is, while the money was still in the government's hands – "would pose the same sovereign immunity issues" whether the order was directed to the fund beneficiaries or to the government. *Id.* at 448. It is on that proposition that the government heavily relies.

The critical distinction that the government overlooks is that the government had not consented to be sued at all in connection with § 210 claims. That provision, which deals with claims of oil-buyers against oil-sellers for overcharges, not only did not authorize suits against the government, it implicitly excluded them.[1] The claimants tried to finesse this problem by invoking a waiver relating to a different type of claim in § 209 of the Economic Stabilization Act, but the court pointed out that that provision was irrelevant to § 210 litigation. *Con Ed*, 445 F.3d at 449. The court expressly declined to reach the question of whether § 209's waiver would permit a common fund attorney's fees award against the fund-beneficiaries while the funds were still in the government's hands. *Id.* at 449-50. In other words, *Con Ed* explicitly refused to comment on the very issue for which the government cites it here.

The claims at bar, of course, are not for § 210 recovery of overcharges under the Economic Stabilization Act but for tax refunds under the Internal Revenue Code and relief other than money damages under the Administrative Procedure Act.[2] The government undeniably has

---

[1] The government's oversight in this connection is, perhaps, pardonable. Although the point is made obliquely in *Con Ed* itself, *see Con Ed*, 445 F.3d at 449, it is explained in detail only in opinions in related cases dealing with earlier stages of the litigation. *See Consolidated Edison Company v. Richardson,* 233 F.3d 1376, 1380 (Fed. Cir. 2000), and *Consolidated Edison Company v. Abraham,* 271 F. Supp. 2d 104, 108-109 (D.C. Cir. 2003).

[2] The common fund theory with respect to the APA claim, of course, will depend on whether that claim eventually enhances the fund in question, *e.g.*, by extending the refund period by several months. Obviously, a claim asserted after and in reaction to the government's May 25, 2006 capitulation on the global long-distance telephone excise tax issue could not have caused that capituation.

consented to suit in cases that involve controversies over tax refunds, *see* 28 U.S.C. § 1346(a)(1), or challenges to administrative action other than requests for money damages. *See* 5 U.S.C. § 702.

The rather narrow sovereign immunity question posed by the case at bar – the question that *Con Ed* quite properly declined to address – is therefore this: Where the United States *has* consented to be sued in connection with a particular class of controversies, does a court dealing with such a case need further *specific* consent to particular remedies that involve money held by the government but belonging to someone else?

The Supreme Court answered that question in its seminal decision in *FHA v. Burr*, 309 U.S. 242 (1940). The issue in that case was whether wages owed by the Federal Housing Administration to two employees could be garnisheed by a judgment creditor of those employees. *Burr*, 309 U.S. at 242-43. The FHA invoked sovereign immunity as a defense, contending that it could only be sued in connection with its own statutory duties and liabilities. *Id.* at 244, 247.

The Court rejected that contention, pointing out that the applicable legislation, as amended, included authorization for the FHA administrator "to sue and be sued in any court of competent jurisdiction." *Id.* at 244. The Court explained that, "Since consent to 'sue and be sued' has been given by Congress, the problem here merely involves a determination of whether or not garnishment comes within the scope of that authorization." *Id.* Insisting that congressional waivers of governmental immunity "should be liberally construed", the Court said that in the absence of express exclusion no "civil process incident to the commencement or continuance of legal proceedings" could be precluded. *Id.* at 245.

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001), provides a more recent example of the application of this principle. The plaintiffs in that case attacked the Interior Department's handling of Native American funds held in so-called IIM ("Individual Indian Money") accounts. The court rejected Interior's sovereign immunity objection, holding that sovereign immunity had been waived by § 702 of the Administrative Procedure Act. *Cobell*, 240 F.3d at 1094-95. As the court explained, the fact that "plaintiffs rely upon common law trust principles in pursuit of their claim is immaterial, as here they seek specific relief other than money damages, and federal courts have jurisdiction to hear such claims under the APA." *Id.*

Once the government is in court by its own consent, in short, no additional waivers for particular remedies are necessary, except to the extent (if any) that Congress has expressly precluded some of those remedies. Just as the government was subject in *Burr* to a judicial remedy (*i.e.*, garnishment) protecting the rights of one party in money the government owed to another, so it is here; and just as remedies based on the common law of trusts were available to the plaintiffs in *Cobell* based on the APA's waiver of sovereign immunity, so a remedy based on the common fund doctrine is available to plaintiff here on precisely the same basis. The same principle that required the FHA to pay a judgment creditor $71.11 owed as wages to a judgment debtor can require the Treasury here to pay Mr. Cohen whatever the Court finds he is due from the billions that the Treasury owes as refunds to phone-users.

The core fact, in sum, continues to be that Mr. Cohen does not seek an attorney's fee award against the government but against third-party beneficiaries of a common fund whose money the government holds. Under *Burr,* the government's general consent to suit in cases of this kind resolves the sovereign immunity issue, and leaves the Court free to decide the propriety of an attorney's fees award under the common fund doctrine against the fund beneficiaries.

B.  **The Government's Failure to Recognize its Burden of Proof on the Causation Issue Combine with Logic and Common Sense to Establish Ample Probability of Success on the Merits of Plaintiff's Claim.**

The government's May 25, 2006 capitulation mooted plaintiff's claim for injunctive relief against future collection of the tax. It was that capitulation that created the common fund out of which Mr. Cohen seeks recovery. Under these circumstances, as Mr. Cohen pointed out in his principal brief on the pending motion, the burden of proof on the causation issue is on the government, not Mr. Cohen. *See Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996)("When the defendant has taken action to moot the lawsuit, defendant bears the burden of proof to establish the absence of a causal connection between the lawsuit and the defendant's action."). The fact that the capitulation came after Mr. Cohen's suit does not by itself prove that the suit caused the capitulation, but it does shift to the government the burden of proving that it did not.

The government overlooks this rule. Although the government necessarily knows the reason for its reversal of position, it has come forward with no evidence at all on that topic. (Indeed, it has filed a motion for a protective order that would prevent any inquiry into it.) The government speculates that adverse appellate results after October, 2005 might explain its about-face, but offers no evidence on that score. (Government's Brief, p. 8) Nor does the government explain why appellate defeats that were by definition foreseeable when it announced its October, 2005 position led to a reversal of that position while opportunities for appellate victory still remained. The government did not have to win every appellate case to create a circuit-split; it only had to win one.

The government points to then-Treasury Secretary Snow's congressional testimony as indicating that the government would give up on the issue if the Sixth Circuit

refused to reconsider its adverse ruling. (Government's Brief, p. 9) The Sixth Circuit's denial of the government's request for reconsideration, however, came on March 30, 2006. *See Officemax, Inc. v. United States,* No. 04-4009, 2006 U.S. App. LEXIS 8294 (6th Cir. Mar. 30, 2006). Nearly two months – and two more adverse appellate decisions – intervened before the government changed its litigation strategy. At the time Secretary Snow testified, moreover, Mr. Cohen's suit was, along with other intervening adverse decisions and litigation, already part of the context for the position that Secretary Snow took. The government implies that the suit did not inform that position, but assertion, conjecture, and guesswork are not enough; proof is required. The government offers none.

The government says finally that it had no reason to treat Mr. Cohen's request for injunctive relief as a source of particular concern, insisting that it has never regarded the Anti-Injunction Act as bullet-proof and one more hole in it would not make that much difference. (Government Brief, p. 9) When it moved to dismiss the claim for permanent injunctive relief in Mr. Cohen's first amended complaint, however, the government sang a very different tune. It argued then that the claim implicated "important policy considerations regarding federal-government [sic] litigation". (Memorandum in Support of United States' Motion to Dismiss in *Cohen v. United States*, Case No. 2:05-CV-1237-RTR (E.D. Wis. Docket No. 12), p. 8)[3] The government argued strenuously at that time that success on Mr. Cohen's injunction claim would cripple the government's general litigation posture by depriving it of the critical right to re-litigate the same issue in several different circuits. (*Id.* at. 8-11) The government's flippant

---

[3] It is counsel's understanding that all pleadings filed in the transferred cases are available to the Court.

suggestion that a concern of preeminent importance inexplicably morphed into a trivial matter after the government's dismissal motion was denied as moot is not credible.

Even if the government were not talking out of both sides of its sovereign mouth on this issue, moreover, a core consideration would remain: assertions of counsel are not evidence. The government cannot sustain its burden of proof by relying on them.

II. **BECAUSE THE COMMON FUND DOCTRINE CALLS FOR PAYMENT FROM THE BENEFICIARIES' FUNDS, THE POSSIBILITY THAT ATTORNEY'S FEES MIGHT (OR MIGHT NOT) BE AVAILABLE FROM THE GOVERNMENT DOES NOT DIMINISH THE RISK OF IRREPARABLE INJURY CONFRONTED BY PLAINTIFF.**

The government does not deny that, once a common fund is disbursed to its beneficiaries, no recovery of attorney's fees is available under the common fund doctrine from the original fund-holder (here, the United States). Nor does it deny that Mr. Cohen could not possibly recover the fees to which he would be equitably entitled by pursuing *pro rata* recoveries from tens of millions of individual fund beneficiaries. The government instead makes two points, both of which ignore the distinction between seeking an attorney's fees award against the government and seeking one against the beneficiaries of a common fund that the government holds.

The government argues first that an array of statutes provide for potential recovery of attorney's fees against the government under certain circumstances that might or might occur. (Government's Brief, p. 10) That is accurate but beside the point. Plaintiff seeks preliminary injunctive relief in an effort to protect his right to a common fund recovery from the fund beneficiaries. The criteria for an attorney's fees award against the government under one or more of the statutes it cites might or might not be satisfied in the future; the government, in fact, implies that they will not be. To the extent they are satisfied, the government does not even

7

pretend that any resulting award would approach Mr. Cohen's entitlement under the common fund doctrine.

The government's complaint that Mr. Cohen's common fund theory seeks to "bypass" the statutory provisions for fee awards against the government (Government's Brief, p. 11) once again ignores the fundamental point Mr. Cohen has repeatedly insisted upon: his common fund theory does not seek fees from the government at all but from the fund beneficiaries. Whatever Mr. Cohen may be entitled to from the government, his entitlement vis-à-vis the fund beneficiaries is distinct. Without the relief he requests, that common fund entitlement is in grave peril, and there will be nothing the law can do about it. That is a textbook case for injunctive relief.

The government's second argument on this score – that all money is fungible – not only ignores Mr. Cohen's point but implicitly contradicts the government's own sovereign immunity argument. The teaching of *Burr* and *Cobell* is that, given a general consent to suit, money owed by the government to a third party is not insulated by sovereign immunity. The centerpiece of the government's position is that money belonging to the government certainly is insulated by that doctrine. If *Burr* and *Cobell* are right, money in one of those categories is *not* the same as money in the other.

To remove any doubt on this point, Mr. Cohen called the government's bluff. He tendered a stipulation offering to withdraw the pending motion if the government would agree to be responsible for any common fund award against the beneficiaries even if the funds had already been disbursed to them.[4] To no one's surprise, the government rejected this proposal out

---

[4] A copy of the proposed stipulation is attached as Exhibit 1.

8

of hand. (*See* Jan. 8, 2007 Letter from Van Hoey to Bowen.)[5] The government's refusal to put its money where its mouth is represents the clearest possible proof that the government itself does not truly believe that the two categories of money are fungible.

### III. THE REAL WORLD LOSS RISKED BY MR. COHEN FAR OUTWEIGHS THE THEORETICAL ACCOUNTING COST CLAIMED BY THE GOVERNMENT.

The government does not deny that Mr. Cohen risks an enormous economic loss, but says that loss should be discounted under the sliding scale approach for what the government calls his "microscopic" chance of prevailing on the merits. (Government's Brief, pp. 12-13) The argument fails because its premise is false. The substantial authority supporting Mr. Cohen's position does not become inapposite simply because the government has ignored it, and the government's burden of proof on causation does not disappear simply because the government has disregarded it.

If anything, in fact, separate application of the sliding scale approach would cut against the government's position. Given the magnitude and irreparable character of the harm he confronts, Mr. Cohen would be entitled to preliminary injunctive relief under that approach even if his ultimate prospects of success were quite modest. That possibility, however, is academic. A party that admits taking billions of dollars illegally is in a poor position to disparage an opposing case supported by logic, common sense, and substantial, relevant, and unquestioned authority.

Based on the testimony of David Williams, the government asks the Court to counterbalance the injury threatening Mr. Cohen with an additional expenditure of more than $ 70 million that it says would be necessary to make a second distribution, should that become

---

[5] Attached as Exhibit 2.

necessary. For at least two reasons, however, Mr. Williams' stunningly counter-intuitive estimate is of no evidentiary value.

First, Mr. Williams does not claim to have computed the estimated cost himself, or to have reviewed the work of others who did so, or to have verified it in any way. (*See* Williams Decl., ¶ 5.) He attributes it only to "the IRS," without specification of the individuals actually involved in arriving at it, or their qualifications for doing so, or the methodology they employed, or the factual basis for their conclusions. (*Id.*) He does not identify a single specific computation underlying the claimed estimate or, for that matter, a single real world number entering into it. (*Id.*) His estimate is not evidence but a conclusory assertion that the Court is asked to accept on blind faith.

Second, the meager, qualitative description that he does provide for the estimate suggests strongly that it is essentially artificial. Mr. Williams attributes the number to "estimates of demand on various IRS functions (phone, correspondence, walk-in, etc.) and includes expenses for printing and processing, marketing and outreach activities, information technology modifications, and compliance activities." (Williams Decl., ¶ 5) He does not and could not credibly suggest, however, that keeping one additional line on an already existing form will require the IRS to hire a single additional telephone operator or clerk-typist. The best judgment permitted by his declaration is that the IRS estimate relates not to additional dollars that will flow out of the government's coffers but to an allocation to this program for accounting purposes of dollars that will be spent in any event.

That is, perhaps, a matter of legitimate interest to accountants. In real world terms, however, it does not begin to compare to the genuine irreparable injury threatening Mr. Cohen.

## IV. THE REQUESTED PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST.

The government complains that Mr. Cohen's discussion of the public interest is merely anti-government invective. It does not, however, put in issue any of the facts underlying his argument, starting with the unavoidable fact that it not only took tens of billions of dollars illegally from American citizens but continued to do so after the courts had ruled that its exactions were against the law. Nor does it deny that it reduced its refund liability by deliberately taking advantage of the practical impossibility of legal redress on the part of individual phone-users.

The government does not deign to address the argument that Mr. Cohen has performed a valuable service by taking risky and vigorous action to correct that abuse. It does not condescend to discuss whether it is in the public interest to encourage such endeavors in the future. Its contemptuous silence is the most eloquent rebuttal Mr. Cohen could offer.

## CONCLUSION

For the reasons outlined in this brief and in his principal brief, plaintiff respectfully requests that his motion for a preliminary injunction be granted.

Dated this 14th day of February, 2007.

        s/ Michael A. Bowen
        Attorney Bar Number: 1016965 (Wis.)
        Zhu (Julie) Lee
        Attorney Bar Number: 1032454 (Wis.)
        Isaac J. Morris
        Attorney Bar Number: 1053535 (Wis.)
        FOLEY & LARDNER LLP
        777 East Wisconsin Avenue
        Milwaukee WI 53202-5306
        Telephone: (414) 271-2400

        Michael D. Leffel
        Attorney Bar Number: 464721 (D.C.)

FOLEY & LARDNER LLP
150 East Gilman Street
Madison WI 53703-1481
(608) 258-4258

<u>Direct Inquiries to:</u>
Michael A. Bowen
Telephone: (414) 297-5538
Facsimile: (414) 297-4900
E-mail: mbowen@foley.com

**Attorneys for Plaintiff Cohen**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**NEILAND COHEN,**

      Plaintiff,

-vs-                                                        Civil Action No. 05-C-1237

**UNITED STATES OF AMERICA,**

      Defendant.

---

**STIPULATION**

---

The parties to the above-entitled litigation, by their undersigned attorneys, hereby stipulate as follows:

(1) If and to the extent an award of attorney's fees is made to plaintiff or his counsel under the common fund doctrine in the above-captioned matter, the United States will not invoke the fact (to the extent it is a fact) that all refunds of long-distance telephone excise taxes owed to phone-users have been paid as a ground for avoiding responsibility to see to it that any judicially determined attorney's fees award from the common fund represented by such refunds (if and to the extent such refunds are ultimately determined to have represented a common fund) are paid; and

(2) Plaintiff's pending motion for a preliminary injunction requiring the United States to set aside a specified portion of the refunds to ensure payment of attorney's fees under the common fund doctrine may be withdrawn as moot.

Dated this _____ day of January, 2007.

MILW_2167468.1

**EXHIBIT 1**

Gregory E. Van Hoey
Maryland Bar
**Attorneys for Defendant**
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044-7238
Telephone: (202) 307-6391
Facsimile: (202) 514-6770
E-mail gregory.van.hoey@usdoj.gov

Dated this _____ day of January, 2007.

Michael A. Bowen
Attorney Bar Number: 1016965
Zhu (Julie) Lee
Attorney Bar Number: 1032454
Isaac J. Morris
Attorney Bar Number: 1053535
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee WI 53202-5306
Telephone: (414) 271-2400

Michael D. Leffel
Attorney Bar Number: 1032238
FOLEY & LARDNER LLP
150 East Gilman Street
Madison WI 53703-1481
(608) 258-4258

**Attorneys for Plaintiff**

Direct Inquiries to:
Michael A. Bowen
Telephone: (414) 297-5538
Facsimile: (414) 297-4900
E-mail: mbowen@foley.com

**U.S. Department of Justice**

Tax Division

*Facsimile No. (202) 514-6770*
*Trial Attorney: Gregory E. Van Hoey*
*Attorney's Direct Line: (202) 307-6391*

5-85-6141
CMN2006100972

*Please reply to:*  Civil Trial Section, Central Region
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044

January 8, 2007

**Via U.S. Mail and E-mail**

Michael A. Bowen, Esq.
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
mbowen@foley.com

      Re:    *Cohen v. United States*
             Case No. 05-C-1237   (USDC ED WI)

Dear Mr. Bowen:

    In response to your January 3 letter, we decline to stipulate as you have proposed. If you wish to withdraw your motion you are, of course, free to do so.

                              Sincerely yours,

                              GREGORY E. VAN HOEY
                              Trial Attorney
                              Civil Trial Section, Central Region

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | : : : : : : : : : : : | Master File:   07-mc-0014 (RMU)<br><br>Member Cases:<br>06-cv-483:   *Sloan et al. v. United States*<br>07-cv-050:   *Gurrola et al. v. United States*<br>07-cv-051:   *Cohen v. United States*<br>06-cv-11459:   *Belloni v. Verizon Commc'ns* |
| This Document Relates To:<br>***Cohen v. United States*** | | MDL Docket No. **1798** |

## DECLARATION OF MICHAEL BOWEN

Michael Bowen makes the following declaration pursuant to 28 U.S.C. § 17:

1. My name is Michael Bowen. I am one of the attorneys for Neiland Cohen in connection with the above-captioned matter.

2. The document attached to Reply Brief in Support of Plaintiff's Preliminary Injunction Motion as Exhibit 1 is a true and correct copy of a proposed stipulation offered to the government in response to its argument that money owed as refunds in this matter was fungible with general government revenue.

3. The document attached to Reply Brief in Support of Plaintiff's Preliminary Injunction Motion as Exhibit 2 is a true and correct copy of the January 8, 2007 letter from government counsel rejecting the proposed stipulation.

I declare under penalty of perjury that the foregoing is true.

Dated: February 14, 2007


s/ Michael A. Bowen

MILW_2215274.1