## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | MDL Docket No. **1798** |
| | Master File:  07-mc-0014 (RMU) |
| | Member Case:  07-cv-801 |
| This Document Relates To: | |
| *Belloni v. Verizon Communications Inc.* | |

### AT&T INC.'S AND BELLSOUTH CORPORATION'S
### MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants AT&T Inc. and BellSouth Corporation respectfully move to dismiss the

amended complaint in *Belloni v. Verizon Communications Inc.*, No. 07-cv-801 (RMU) (D.D.C.),

pursuant to Federal Rule of Civil Procedure 12(b)(2).

Dated: August 10, 2007                     Respectfully submitted,

 

                                                     /s/ Sean A. Lev
Javier Aguilar                                      Michael K. Kellogg (DC Bar # 372049)
Tracy N. Turner                                    Sean A. Lev (DC Bar # 449936)
AT&T SERVICES, INC.                                KELLOGG, HUBER, HANSEN, TODD,
175 E. Houston                                       EVANS & FIGEL, P.L.L.C.
San Antonio, Texas 78205                           Sumner Square
Phone: (210) 351-5025                              1615 M Street, N.W., Suite 400
Facsimile: (210) 351-3458                          Washington, D.C. 20036
                                                   Phone: (202) 326-7900
                                                   Facsimile: (202) 326-7999

*Attorneys for Defendants AT&T Inc. and BellSouth Corporation*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In re LONG-DISTANCE TELEPHONE
SERVICE FEDERAL EXCISE TAX
REFUND LITIGATION

MDL Docket No. **1798**

Master File:  07-mc-0014 (RMU)

Member Case:  07-cv-801

This Document Relates To:

*Belloni v. Verizon Communications Inc.*

## MEMORANDUM OF LAW IN SUPPORT OF AT&T INC.'S AND BELLSOUTH CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants AT&T Inc. and BellSouth Corporation[1] respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint in *Belloni v. Verizon Communications Inc.*, No. 07-cv-801 (RMU) (D.D.C.), pursuant to Federal Rule of Civil Procedure 12(b)(2).

For the reasons set forth below, AT&T Inc. and BellSouth Corporation should be dismissed from this action for lack of personal jurisdiction.  AT&T Inc. and BellSouth Corporation are both holding companies that provide no services to the public in New York, which is the relevant state for these purposes because it is the state in which this action was filed. *See infra* p. 4.  They own no property in New York and have no contacts with the state that would provide a statutory or constitutional basis for New York courts to exercise personal jurisdiction over them.  The Court thus lacks jurisdiction over these defendants.[2]

---

[1] BellSouth Corporation was acquired by AT&T Inc. on December 29, 2006.

[2] In opposing plaintiffs' motion to vacate the JPML's Conditional Transfer Order, as well as a similar motion filed by the plaintiffs in *Sloan et al. v. United States*, No. 06-cv-483 (D.D.C.), defendants expressly preserved the defense of lack of personal jurisdiction.  *See* Joint Memorandum of Defendants Alltel Corp., AT&T Inc., BellSouth Corp., CenturyTel Inc., Global

## BACKGROUND

This litigation stems from defendants' alleged collection of federal excise tax (the "FET") from certain classes of consumers. Telephone service is subject to the FET if customers are charged a rate that "varies in amount with the distance and elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1). Until recently, the Internal Revenue Service ("IRS") had taken the position that all long-distance service in which customers are charged an amount that varies with the transmission time of the communication is subject to the tax, regardless of whether the cost of the service varies with the distance of the communication. As a result, the IRS required long-distance telecommunications carriers, *see id.* § 4291, to collect the FET from customers who were charged an amount based on the duration of their calls but not the distance of such calls.

Several taxpayers challenged this interpretation and, after a series of defeats in the courts of appeals,[3] the IRS changed its position. On May 25, 2006, the agency announced that it would no longer require telecommunications companies to charge the FET to certain classes of customers. *See* IRS News Release IR-2006-82, *Government To Stop Collecting Long-Distance Telephone Tax* (May 25, 2006); *see also* IRS Notice 2006-50, 2006-25 I.R.B. 1141 (June 19, 2006) ("FET Notice"). Carriers were authorized to collect the tax and remit it to the agency

---

Crossing North America Inc., Qwest Corp., Sprint Nextel Corp., Time Warner Inc., T-Mobile USA Inc., Verizon Communications Inc., Verizon Business Global LLC (formerly known as "MCI, Inc."), and Virgin Mobile USA LLC in Opposition to the Motion of the *Belloni* Plaintiffs To Vacate the Conditional Transfer Order (CTO-1) That Includes the *Belloni* Action in MDL-1798 at 2 n.1 (filed Mar. 8, 2007); Joint Memorandum of Defendants Alltel Corp., AT&T Inc., BellSouth Corp., CenturyTel Inc., Global Crossing North America Inc., Qwest Corp., Sprint Nextel Corp., Time Warner Inc., T-Mobile USA Inc., Verizon Communications Inc., Verizon Business Global LLC (formerly known as "MCI, Inc."), and Virgin Mobile USA LLC in Opposition to the Motion of the *Sloan* Plaintiffs To Vacate the Conditional Transfer Order (CTO-1) That Includes the *Belloni* Action in MDL-1798 at 2 n.1 (filed Feb. 21, 2007).

[3] *See*, *e.g.*, *American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1330 (11th Cir. 2005).

through July 31, 2006.  *See* FET Notice § 4(c).  In addition, the IRS created a mechanism

whereby consumers who had paid the tax could request refunds directly from the federal

government.  *See id.* § 5.

Plaintiffs filed their complaint in October 2006, alleging five separate causes of action

against 12 different telecommunications companies (as well as various John Doe individuals,

corporations, and entities) stemming from those companies' alleged collection of the FET.  *See*

Class Action Compl. (filed Oct. 30, 2006).  Plaintiffs amended their complaint two months later.

*See* Am. Class Action Compl. (filed Dec. 18, 2006) ("Am. Compl.").  While conceding that

defendants' collection of the FET was consistent with the position taken by the IRS at the time in

question, *see id.* ¶ 84, and acknowledging that all funds collected through defendants' actions

were remitted to the federal government, *see id.* ¶ 47, plaintiffs nonetheless charge that

defendants' collection of the tax violated their supposed tariffing obligations under 47 U.S.C.

§ 203(a) and (c); breached unspecified contracts between plaintiffs and defendants; violated

fiduciary duties that defendants allegedly owed to plaintiffs; and involved an unlawful

conspiracy on the part of defendants, *see* Am. Compl. ¶¶ 60-102.

In their amended complaint, plaintiffs name AT&T Inc. and BellSouth Corporation as

defendants.  *See id.* ¶¶ 27, 35.  AT&T Inc. is a holding company that does no business in New

York State and owns no real or personal property in the state.  *See* Declaration of Terrence Britt

¶¶ 4, 6, 8, 9-11 ("Britt Decl.") (attached hereto as Exh. A).  The same is true of BellSouth

Corporation.  *See* Affidavit of James W. Lacy, Jr. ¶¶ 8, 10, 13 ("Lacy Aff.") (attached hereto as

Exh. B).  Neither company provides any telecommunications services to the public and, as a

result, neither company has played any role in the collection of the FET from customers.  *See*

Britt Decl. ¶¶ 6-7; Lacy Aff. ¶¶ 6, 13.

Plaintiffs' amended complaint simply asserts that AT&T Inc. conducts business in the forum "through its subsidiary corporations, AT&T Corp., AT&T Services Inc. and AT&T Communications of New York, Inc.," Am. Compl. ¶ 27, and that BellSouth Corporation "is a telephone communications company providing long-distance telephone services to members of the proposed Class," *id.* ¶ 35. AT&T Inc., however, is an entirely separate legal entity from its subsidiaries. It acts as a holding company and conducts no business with the public, and thus did not collect or remit any FET funds at any time. *See* Britt Decl. ¶¶ 4-5, 7.

Plaintiffs do not even allege that BellSouth Corporation has conducted any business in New York State, either directly or through subsidiaries. In any event, like AT&T Inc., BellSouth Corporation has played no role in the collection or remittance of FET funds. *See* Lacy Aff. ¶ 13. Thus, not only are AT&T Inc. and BellSouth Corporation not subject to the personal jurisdiction of New York courts, but, even if they were, they are clearly not proper parties to this action.

## ARGUMENT

Because this action was filed in the Southern District of New York, the appropriate jurisdictional analysis here focuses on whether AT&T Inc. and BellSouth Corporation are subject to personal jurisdiction in the *New York* federal courts. *See Archer Daniels Midland v. F. Hoffman-Laroche, Ltd. (In re Vitamins Antitrust Litig.)*, 270 F. Supp. 2d 15, 33-35 (D.D.C. 2003) (applying law of transferor forum in evaluating Rule 12(b)(2) motion); *City of Portsmouth v. Amerada Hess Corp. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, No. 1:00-1898, 2005 WL 1529594, at *1 (S.D.N.Y. June 24, 2005) (observing, in ruling on Rule 12(b)(2) motions, that "[i]n multi-district litigation, the law of the state where the action was first filed governs").

Plaintiffs bear the burden of establishing such personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam); *see also Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). To do so, they must demonstrate (1) that a relevant state statute authorizes jurisdiction and (2) that the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See* Fed. R. Civ. P. 4(k)(1)(A); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *Bondi v. Bank of Am. Corp. (In re Parmalat Sec. Litig.)*, 381 F. Supp. 2d 283, 287 (S.D.N.Y. 2005); *Kensington Int'l Ltd. v. Societe Nationale des Petroles du Congo*, No. 05 Civ. 5101(LAP), 2006 WL 846351, at *3 (S.D.N.Y. Mar. 31, 2006); *cf. Marsh v. Kitchen*, 480 F.2d 1270, 1272 n.6 (2d Cir. 1973).

Ultimately, both elements must be shown by a preponderance of the evidence. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). At this stage of the case, however, plaintiffs must establish a prima facie case for the exercise of jurisdiction by pointing to affidavits or other relevant evidence. *See Visual Scis., Inc. v. Integrated Communications Inc.*, 660 F.2d 56, 58 (2d Cir. 1981); *Second Amendment Found.*, 274 F.3d at 524.

Here, plaintiffs can make neither of the required showings. AT&T Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas; BellSouth Corporation is a Georgia corporation with its principal place of business in Georgia. *See* Britt Decl. ¶¶ 2-3; Lacy Aff. ¶ 3. AT&T Inc. and BellSouth Corporation have no employees in New York and provide no telecommunications services – or services of any kind – to the public in New York. *See* Britt Decl. ¶ 8; Lacy Aff. ¶¶ 6-7, 13. Neither company has ever been licensed to provide services anywhere in New York, keeps a mailing address in New York, owns real property in

New York, pays taxes to New York State, or keeps a registered agent in the state for service of

process.  *See* Britt Decl. ¶¶ 6, 8-11; Lacy Aff. ¶¶ 6-13.  As a result, AT&T Inc. and BellSouth

Corporation are plainly not subject to the personal jurisdiction of New York courts.

**I.      AT&T INC. AND BELLSOUTH CORPORATION ARE NOT SUBJECT TO
         PERSONAL JURISDICTION UNDER THE N.Y. C.P.L.R.**

        Plaintiffs cannot meet the first requirement for personal jurisdiction here because the

New York long-arm statute, which does not extend to the full reach of the Due Process Clause,

does not authorize personal jurisdiction over AT&T Inc. or BellSouth Corporation.  *See*, *e.g.*,

*Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 829-30, 522 N.E.2d 1027, 1029 (1988)

("[T]he New York long-arm statute (CPLR 302) does not provide for in personam jurisdiction in

every case in which due process would permit it.").

        Plaintiffs allege, in conclusory terms, that defendants are subject to the personal

jurisdiction of New York courts under N.Y. C.P.L.R. 302.  *See* Am. Compl. ¶ 17.  That section

provides in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a
> court may exercise personal jurisdiction over any non-domiciliary, or his executor
> or administrator, who in person or through an agent:
>
> 1.  transacts any business within the state or contracts anywhere to supply
> goods or services in the state; or
>
> 2.  commits a tortious act within the state, except as to a cause of action for
> defamation of character arising from the act; or
>
> 3.  commits a tortious act without the state causing injury to person or
> property within the state, except as to a cause of action for defamation of
> character arising from the act, if he
>
> > (i) regularly does or solicits business, or engages in any other persistent
> > course of conduct, or derives substantial revenue from goods used or
> > consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a) (McKinney 2006).[4]

None of these provisions applies to AT&T Inc. or BellSouth Corporation.  These companies do not "transact[ ] any business within the state or contract[ ] anywhere to supply goods or services in the state."  As explained above, they have never been licensed to do business in New York and do not provide services to residents of New York.  *See* Britt Decl. ¶¶ 8, 9; Lacy Aff. ¶¶ 6, 8.  Because they do not provide goods or services to customers anywhere, nothing produced by AT&T Inc. or BellSouth Corporation could have entered New York through the "stream of commerce."  *See* Britt Decl. ¶¶ 6, 11; Lacy Aff. ¶¶ 6, 13.  In addition, because AT&T Inc. and BellSouth Corporation do not assess, collect, or remit the FET, they have not (and could not have) "commit[ted] a tortious act within the state" or a "tortious act without the state causing injury to person or property within the state."  *See* Britt Decl. ¶ 7; Lacy Aff. ¶ 13.  Finally, AT&T Inc. and BellSouth Corporation do not own, use, or possess "any real property situated within the state."  *See* Britt Decl. ¶ 8; Lacy Aff. ¶ 10.  The amended complaint contains no allegations to the contrary.

Given that neither company has engaged in any activity that would subject it to the jurisdiction of New York courts, plaintiffs apparently seek to establish jurisdiction by arguing

---

[4] A separate jurisdictional statute provides:  "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. 301 (McKinney 2006).  Under this provision, a court may exercise jurisdiction over a foreign corporation "if it is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in this jurisdiction."  *Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 430-31, 278 N.E.2d 895, 896 (1972).  Plaintiffs do not allege – nor could they – that AT&T Inc. and BellSouth Corporation are subject to jurisdiction under this section.

(1) that the activities of AT&T Inc.'s subsidiaries may be attributed to AT&T Inc.[5] and (2) that all defendants (including AT&T Inc. and BellSouth Corporation) are subject to the personal jurisdiction of New York courts because they jointly participated in an alleged conspiracy.[6] *See* Am. Compl. ¶¶ 10, 27.  Under settled precedent, plaintiffs cannot establish personal jurisdiction under either of these theories.

### A. The Activities of AT&T Inc.'s Subsidiaries Do Not Subject AT&T Inc. to the Jurisdiction of This Court

First, the amended complaint's assertion that AT&T Inc. provides telecommunications services to residents of New York "through its subsidiary corporations," Am. Compl. ¶ 27, is insufficient to establish that those subsidiaries act as agents of AT&T Inc. for jurisdictional purposes.  Under New York law, "[a] finding of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship."  *Porter v. LSB Indus., Inc.*, 192 A.D.2d 205, 213, 600 N.Y.S.2d 867, 872 (4th Dep't 1993).  Rather, "[i]n order for the subsidiary's activities to warrant the exercise of jurisdiction over the parent, the parent's control over the subsidiary's activities must be so complete that the subsidiary is, in fact, merely a department of the parent.  A subsidiary will be considered a 'mere department' only if the foreign parent's control of the subsidiary is so pervasive that the corporate separation is more

---

[5] Plaintiffs make no similar claim with respect to BellSouth Corporation.  Regardless, any such argument would fail, for the same reasons plaintiffs' arguments with respect to AT&T Inc. fail.

[6] Plaintiffs also allege (*see* Am. Compl. ¶ 18) that personal jurisdiction may be exercised over defendants under 47 U.S.C. § 207, which provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the [Federal Communications] Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction."  This provision vests the district courts with *subject matter* jurisdiction over complaints brought under § 207, but it does not vest them with *personal* jurisdiction over all defendants in such actions.  *See, e.g.*, *Digitel, Inc. v. MCI WorldCom, Inc.*, 239 F.3d 187, 190-91 (2d Cir. 2001) (per curiam) (discussing application of § 207).

formal than real." *Id.* at 213, 600 N.Y.S.2d at 872-73 (citations and internal quotation marks

omitted). *Porter* identified four factors that courts consider in determining whether to attribute

the acts of a subsidiary to the parent:

> (1) common ownership and the presence of an interlocking directorate and
> executive staff; (2) financial dependency of the subsidiary on the parent; (3) the
> degree to which the parent interferes in the selection and assignment of the
> subsidiary's executive personnel and fails to observe corporate formalities; and
> (4) the degree of the parent's control of the subsidiary's marketing and
> operational policies.

*Id.* at 213, 600 N.Y.S.2d at 873; *see also Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*

*Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). Plaintiffs do not plead, much less can they

establish, that any of AT&T Inc.'s subsidiaries meets these requirements and thus acted as a

"mere department" or "agent" for the parent company.[7]

In fact, all of AT&T Inc.'s subsidiaries are legally and factually separate corporate

entities with their own corporate, partnership, or limited liability company status. *See* Britt Decl.

¶ 5. Faced with similar facts, the District Court for the Southern District of New York has

rejected the argument that a parent company and a subsidiary that was virtually wholly owned by

the parent (99.6% of outstanding shares were owned by the parent) should be treated as one unit

for jurisdictional purposes. *See Giar v. Centea*, No. 02 Civ. 7916(LLS), 2003 WL 1900836, at

*1 (S.D.N.Y. Apr. 16, 2003), *aff'd*, 86 F. App'x 461 (2d Cir. 2004). In *Giar*, the court held that

the facts offered by the plaintiff in support of his allegation that the subsidiary acted as a "mere

department" of the parent "show[ed] no more than the normal business influence of a corporate

parent; they fall far short of the pervasive control over the subsidiary that the 'mere department'

---

[7] To the extent plaintiffs seek to establish jurisdiction based on this theory, they obviously must
identify which of AT&T Inc.'s subsidiaries are subject to jurisdiction in New York and must
demonstrate why the activities of those subsidiaries should be imputed to AT&T Inc. for
jurisdictional purposes. Their amended complaint fails to do so.

standard requires." *Id.* (internal quotation marks omitted); *see Volkswagenwerk Aktiengesellschaft*, 751 F.2d at 121 ("Of course, the officers of a parent normally control the board of directors of a subsidiary in their capacity as representatives of the controlling stockholder.  However, when the parent officers extend their control beyond that normally exercised by boards of directors, their behavior supports an inference that the subsidiary is not an independent entity.").

In addition, there are no allegations that the relevant AT&T Inc. subsidiaries are financially dependent upon AT&T Inc.  Furthermore, as explained above and in the Declaration of Terrence Britt, AT&T Inc. and its subsidiaries assiduously observe the necessary corporate formalities.  *See* Britt Decl. ¶ 5.

In sum, the relationship between AT&T Inc. and its subsidiaries "show[s] no more than the normal business influence of a corporate parent." *Giar*, 2003 WL 1900836, at *1.  This case is thus analogous to *Porter*, in which the court refused to find the existence of an agency relationship between a parent holding company and its wholly owned subsidiary, even though the two companies had board members in common, the parent was financially dependent upon the subsidiary, and the parent provided the subsidiary with legal, accounting, banking, and insurance services.  *See* 192 A.D.2d at 213-14, 600 N.Y.S.2d at 873.  Even more so than in *Porter*, there is no personal jurisdiction here because there is no evidence or allegation that AT&T Inc. "fails to observe corporate formalities in its relationship with its subsidiaries." *Id.* at 214, 600 N.Y.S.2d at 873; *see Berkman v. Ann Lewis Shops, Inc.*, 246 F.2d 44, 48 (2d Cir. 1957) (holding that activities of subsidiary did not subject parent holding company to jurisdiction where "separate corporate identities of the defendant and its . . . subsidiary were carefully preserved, and thus the two were not merely principal and agent in one organization").

**B.     Plaintiffs' Vague and Unfounded Allegations of Conspiracy Do Not Subject AT&T Inc. and BellSouth Corporation to the Personal Jurisdiction of This Court**

The amended complaint's allegations that all defendants "conspired amongst themselves" to collect a tax required by the IRS and "knew that their conspiratorial acts would impact all long distance telephone customers, including residents of [the Southern District of New York]," *see* Am. Compl. ¶¶ 8, 16, are insufficient to vest New York courts with jurisdiction over AT&T Inc. and BellSouth Corporation.  As the District Court for the Southern District of New York has explained, "[t]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of [N.Y. C.P.L.R.] 302(a)(2).  To establish jurisdiction on this basis, a plaintiff[] must clear two hurdles:  (1) it must make a *prima facie* factual showing of a conspiracy; and (2) it must allege specific facts warranting the inference that the defendant was a member of the conspiracy." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (citation and internal quotation marks omitted).  Here, plaintiffs' amended complaint contains no facts that even suggest the existence of a conspiracy.  Nor does it contain any facts that support the conclusion that, if such a conspiracy existed, AT&T Inc. and BellSouth Corporation – which, again, provide no services to the public and conduct no business in New York – participated in it.  In fact, given that these companies have no involvement whatsoever in the collection or remittance of the FET, *see* Britt Decl. ¶ 7; Lacy Aff. ¶ 13, they could not have participated in such a conspiracy.  This fact alone is sufficient to defeat any argument that jurisdiction can be premised upon the existence of a conspiracy.  *See Lamarr v. Klein*, 35 A.D.2d 248, 250-51, 315 N.Y.S.2d 695, 698 (1st Dep't 1970) (rejecting argument that participation in alleged conspiracy subjected defendant to jurisdiction where defendant submitted affidavit affirmatively denying any involvement and plaintiff relied on nothing more than "conclusory

allegations"), *aff'd*, 30 N.Y.2d 757, 284 N.E.2d 576 (1972).  Because plaintiffs have not identified any "definite evidentiary facts to connect the defendant with transactions occurring in New York," *Socialist Workers Party v. Attorney Gen. of United States*, 375 F. Supp. 318, 322 (S.D.N.Y. 1974), they have not come close to satisfying the threshold requirements necessary to permit a New York court to exercise jurisdiction over AT&T Inc. or BellSouth Corporation due to the existence of a conspiracy.

For all these reasons, AT&T Inc. and BellSouth Corporation are not subject to the personal jurisdiction of New York courts under the N.Y. C.P.L.R.

## II.    THIS COURT CANNOT EXERCISE JURISDICTION OVER AT&T INC. AND BELLSOUTH CORPORATION CONSISTENT WITH THE FOURTEENTH AMENDMENT

Even if this Court were to determine that AT&T Inc. and BellSouth Corporation are subject to jurisdiction in New York under the N.Y. C.P.L.R., the Fourteenth Amendment independently precludes the exercise of personal jurisdiction.  Under the Fourteenth Amendment, a defendant may be subject to the personal jurisdiction of a forum court only if it can be shown that it has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).[8]  The Supreme Court has further noted that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235,

---

[8] If a defendant's contacts with the forum are "continuous and systematic" – but not necessarily related to the events giving rise to the action – then a court may exercise "general jurisdiction" over that defendant.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  If, by contrast, the defendant's contacts are more limited in nature but relate to the events giving rise to the underlying action, then the court may exercise "specific jurisdiction." *See id.* at 414 n.8.

253 (1958).  In addition, if a defendant's contacts satisfy this "minimum contacts" test, jurisdiction may still be defeated if "the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

As set forth above, AT&T Inc. and BellSouth Corporation have no contacts with New York that would justify the exercise of jurisdiction over them:  They provide no services to consumers in New York; they have no employees in New York; they own no real property in New York; they are not licensed to do business in New York; and they have no registered agent in New York.  Faced with similar facts, the District Court for the District of Maryland concluded that AT&T Inc.'s predecessor (SBC Communications Inc.) was not subject to personal jurisdiction in that court.  *See Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 724 (D. Md. 2000).  The *Newman* court noted that SBC had no employees or offices in Maryland, that it did not "directly conduct[ ] business in Maryland," and that it was not "registered or licensed in Maryland," and therefore clearly was not subject to that court's personal jurisdiction on the basis of its own conduct.  *Id.* at 722.

The same is true here:  AT&T Inc. and BellSouth Corporation have no contacts with New York that would justify the exercise of jurisdiction.  *See also Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003) (affirming dismissal of suit against holding company due to lack of personal jurisdiction); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (same); *Hoffman v. Tyco Int'l, Ltd.*, No. 06-2961, 2006 WL 3759709, at *3-*5 (E.D. Pa. Dec. 18, 2006) (dismissing suit against holding company due to lack of personal jurisdiction).[9]

_____

[9] To be sure, the stock of AT&T Inc. is traded on the New York Stock Exchange, as was the stock of BellSouth Corporation prior to December 29, 2006.  The Second Circuit has established, however, that this contact is insufficient to vest New York courts with personal jurisdiction.  *See*

To the extent plaintiffs allege that the exercise of jurisdiction over AT&T Inc. and

BellSouth Corporation would not offend due process because the contacts of their alleged

co-conspirators or agents may be attributed to them, this Court should reject these arguments.

As multiple cases establish, the bald and unsupported allegations of conspiracy contained in the

amended complaint cannot satisfy the Fourteenth Amendment's requirements in this context.

*See*, *e.g.*, *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir.

1997) (finding that the "district court could not, consistent with due process, exercise personal

jurisdiction over" defendants based on "'bald speculation' or a 'conclusionary statement' that

individuals are co-conspirators") (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787

(D.C. Cir. 1983)); *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995)

(affirming dismissal where plaintiff failed to adequately plead existence of conspiracy);

*McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983) (per curiam) ("Courts that have

approved the exercise of long-arm jurisdiction pursuant to the conspiracy theory typically require

the plaintiff to make a threshold showing, *inter alia*, that a conspiracy existed and that the

defendants participated therein.").

Similarly, there is no basis for concluding that the contacts of AT&T Inc.'s subsidiaries

can be attributed to AT&T Inc. for jurisdictional purposes.[10]  In *Cannon Manufacturing Co. v.*

---

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97-98 (2d Cir. 2000) ("We agree that the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."); *see also Telcordia Techs., Inc. v. Telkom SA, Ltd. (In re Telcordia Techs., Inc.)*, No. 02-1990 (JR), 2003 U.S. Dist. LEXIS 23726, at *11-*12 (D.D.C. July 20, 2003) (finding that listing an initial public offering on the New York Stock Exchange did not subject a foreign corporation to the jurisdiction of U.S. courts), *aff'd*, 95 F. App'x 361 (D.C. Cir. 2004).

[10] Again, there is nothing in plaintiffs' amended complaint that suggests that plaintiffs seek to attribute the actions of BellSouth Corporation's subsidiaries to BellSouth Corporation for

*Cudahy Packing Co.*, 267 U.S. 333 (1925), the Supreme Court specifically rejected the argument that a subsidiary's contacts should automatically be attributed to the parent. *See id.* at 336 ("use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction"); *Berkman*, 246 F.2d at 48; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary.  Each defendant's contacts with the forum State must be assessed individually.") (citations omitted).

Here, there are no facts alleged in the amended complaint that would support a finding that the contacts of AT&T Inc.'s subsidiaries should be attributed to the holding company. Rather, plaintiffs seem to rely on the fact that AT&T Inc. owns 100% of the shares of its subsidiaries that may do business in New York.  However, as the Seventh Circuit has noted, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."  *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see also GTE New Media Servs.*, 199 F.3d at 1352 (rejecting the "bold claim" that "parent companies and subsidiaries . . . should be treated identically" for jurisdictional purposes). There are no facts here that would support the conclusion that AT&T Inc. exercises "an unusually high degree of control" over its subsidiaries.  Indeed, for precisely this reason, the *Newman* court rejected the argument that AT&T Inc.'s (then SBC's) subsidiaries that conducted business in Maryland could be considered agents of the parent company for jurisdictional

---

jurisdictional purposes.  Regardless, the analysis with respect to BellSouth Corporation is the same as it would be with respect to AT&T Inc.

purposes. *See* 125 F. Supp. 2d at 722-23. Thus, there is no constitutional basis for a New York

court to exercise personal jurisdiction over AT&T Inc. based on the actions of its subsidiaries.[11]

## CONCLUSION

For the reasons set forth above, AT&T Inc. and BellSouth Corporation respectfully

request that this Court grant their motion to dismiss this action pursuant to Federal Rule of Civil

Procedure 12(b)(2).

Dated: August 10, 2007                          Respectfully submitted,


                                                /s/ Sean A. Lev
                                                _____
Javier Aguilar                                  Michael K. Kellogg (DC Bar # 372049)
Tracy N. Turner                                 Sean A. Lev (DC Bar # 449936)
AT&T SERVICES, INC.                             KELLOGG, HUBER, HANSEN, TODD,
175 E. Houston                                    EVANS & FIGEL, P.L.L.C.
San Antonio, Texas 78205                        Sumner Square
Phone: (210) 351-5025                           1615 M Street, N.W., Suite 400
Facsimile: (210) 351-3458                       Washington, D.C. 20036
                                                Phone: (202) 326-7900
                                                Facsimile: (202) 326-7999


*Attorneys for Defendants AT&T Inc. and BellSouth Corporation*

---

[11] No subsidiary of AT&T Inc. is liable to plaintiffs under any theory. Nonetheless, in order to avoid the necessity of litigating this motion, counsel for AT&T Inc. attempted to work with plaintiffs' counsel to identify which subsidiaries of AT&T Inc., if any, had provided long-distance services to plaintiffs, so that plaintiffs could name those entities (rather than AT&T Inc.) in their amended complaint. To that end, counsel for AT&T Inc. requested from plaintiffs' counsel the names, addresses, telephone numbers, and dates of service of the two named plaintiffs who claimed to have received service from subsidiaries of AT&T Inc. Plaintiffs' counsel did not provide the requested information regarding his clients until nearly two months later – by which point plaintiffs had filed their amended complaint, which continued to name AT&T Inc. as a defendant. *See* E-mail from Paul Drummond to Christopher Neufeld (Nov. 22, 2006); E-mail from Paul Drummond to Christopher Neufeld (Dec. 5, 2006); E-mail from Christopher Neufeld to Paul Drummond (Dec. 7, 2006); E-mail from Paul Drummond to Christopher Neufeld (Dec. 7, 2006); E-mail from Christopher Neufeld to Paul Drummond (Jan. 17, 2007) (attached hereto as Exh. C).

## NOTICE OF FILING AND SERVICE

I hereby certify that, on August 10, 2007, copies of (1) AT&T Inc.'s and BellSouth Corporation's Motion To Dismiss the Amended Complaint; (2) the Memorandum of Law; (3) a Proposed Order; and (4) Exhibits A-C were filed electronically and served by mail on any party unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by overnight mail to any party unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Sean A. Lev
Sean A. Lev (DC Bar # 449936)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Facsimile: (202) 326-7999

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | MDL Docket No. **1798**<br><br>Master File:  07-mc-0014 (RMU)<br><br>Member Case:  07-cv-801 |
| This Document Relates To:<br><br>*Belloni v. Verizon Communications Inc.* | |

**[PROPOSED] ORDER**

Upon consideration of AT&T Inc.'s and BellSouth Corporation's Motion To Dismiss the Amended Complaint in *Belloni v. Verizon Communications Inc.*, No. 07-cv-801 (RMU), the memorandum in support thereof, and any opposition and reply thereto, it is hereby

**ORDERED** that the motion to dismiss is GRANTED, and this action is dismissed with prejudice with respect to AT&T Inc. and BellSouth Corporation.

_____
DATE

_____
Ricardo M. Urbina
United States District Judge

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | Master File: 07-mc-0014 (RMU) |
| | Member Cases: |
| | 06-cv-483: *Sloan v. United States* |
| | 07-cv-050: *Gurrola v. United States* |
| | 07-cv-051: *Cohen v. United States* |
| This Document Relates To: | 07-cv-801: *Belloni v. Verizon* |
| *Belloni v. Verizon Communications Inc.* | MDL Docket No. **1798** |

## Declaration of Terrence Britt

1. My name is Terrence Britt. I am a Director of Income Tax with AT&T Services, Inc., and have served in that position since 2001. My job duties include assisting in the preparation of federal and state tax returns for AT&T Inc. and its subsidiaries. Accordingly, I am personally familiar with the corporate structure of AT&T Inc. All of the statements in this Declaration are, unless otherwise indicated, based upon my personal knowledge, review of corporate and business records, and interviews with appropriately knowledgeable persons.

2. AT&T Inc. was incorporated in Delaware in October 1983 under the name Southwestern Bell Corporation. Since then it has changed its name twice. In 1995, it changed its name to SBC Communications Inc. In 2005, after the acquisition of AT&T Corp., a New York corporation, SBC Communications Inc. changed its name to AT&T Inc. The acquired company, AT&T Corp., is a subsidiary of AT&T Inc. Throughout, AT&T Inc. has remained a Delaware corporation.

3.  AT&T Inc.'s principal and only place of business is in San Antonio, Texas. Before it moved to San Antonio, its principal and only place of business was in St. Louis, Missouri.

4.  AT&T Inc. is and always has been a holding company.  As a holding company, AT&T Inc. conducts no business directly with the public.

5.  AT&T Inc. is a legally and factually separate corporate entity that is distinct from its subsidiaries.  Each of AT&T Inc.'s subsidiaries maintains its own independent corporate, partnership, or limited liability company status and structure.

6.  AT&T Inc. does not own or maintain a telecommunications network and it does not provide telecommunications services to the public in New York or any other state. AT&T Inc. does not make or sell products or services of any kind in any state or jurisdiction.

7.  Because AT&T Inc. does not provide telecommunications services to the public, it does not collect or remit federal communications excise tax.

8.  AT&T Inc. has no employees.  AT&T Inc. does not have an office or mailing address in New York, does not own, lease, manage, or maintain any real property in New York, or provide telecommunications, Internet, or other services to consumers in New York.

9.  AT&T Inc. has never been registered or otherwise qualified to do business in the State of New York and, therefore, AT&T Inc. has not appointed a registered agent for service of process in New York.

10. AT&T Inc. does not pay income, property, franchise, severance, or use taxes to the State of New York.

2

11. AT&T Inc. does not manufacture any product of any kind or provide any service of any nature that could find its way through the stream of commerce into New York. AT&T Inc. has not chosen to avail itself of the privilege of doing business in the State of New York.

12. The internet website www.att.com was developed, and is maintained and administered, by a subsidiary of AT&T Inc., not AT&T Inc. itself. The goods and services that are marketed on the att.com website are the goods and services of AT&T Inc.'s subsidiaries and business partners. AT&T Inc. does not offer goods and services to the public and, therefore, none of the goods or services offered on the att.com website are provided by AT&T Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 2, 2007.

_Terrence Britt_
Terrence Britt

3

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | Master File: 07-mc-0014 (RMU) |
| | Member Cases: |
| | 06-cv-483: *Sloan v. United States* |
| | 07-cv-050: *Gurrola v. United States* |
| | 07-cv-051: *Cohen v. United States* |
| This Document Relates To: | 07-cv-801: *Belloni v. Verizon* |
| *Belloni v. Verizon Communications Inc.* | MDL Docket No. **1798** |

### Affidavit of James W. Lacy, Jr.

I, James W. Lacy, Jr. declare and state as follows:

1.      I am of legal age and competent to testify.

2.      I am employed by BellSouth Corporation as Director – Finance and have held that position since September 1, 2004.  In that position I assist in the accounting of revenues and expenses across the operating subsidiaries of BellSouth Corporation, and have become familiar with the corporate structure of BellSouth Corporation.   I make this Affidavit based on my personal knowledge, review of corporate records, or interviews with appropriately knowledgeable persons.  If called and sworn as a witness, I could and would testify competently to these facts.

3.      BellSouth Corporation is a Georgia corporation with its principal place of business and corporate headquarters in the State of Georgia.

4.      BellSouth Corporation was incorporated in Georgia on October 13, 1983. BellSouth Corporation is and always has been a holding company.  It was created as one of seven regional holding companies that were divested on January 1, 1984, by the American Telephone and Telegraph Company as part of the settlement of *United States v. Western*

686542v1

1 of 3

*Electric Company, Inc.*, Civil Action No. 82-0192 (D.D.C.). As part of that divestiture, it received equity interests in the Southern Bell Telephone and Telegraph Company, South Central Bell Telephone Company and certain other companies.

5. BellSouth Corporation is a legally and factually separate corporate entity, distinct from each of its direct and indirect subsidiaries. Each of BellSouth Corporation's subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity and structure.

6. BellSouth Corporation does not own or maintain a telecommunications network and it does not provide telecommunications services to the public. As a holding company, BellSouth Corporation does not make or sell products or services of any kind in any state or jurisdiction.

7. BellSouth Corporation has no offices and no employees in the State of New York.

8. BellSouth Corporation is not and has never been registered, licensed, or qualified to do business in the State of New York.

9. BellSouth Corporation has not authorized or designated an individual or corporation to accept service of process in the State of New York.

10. BellSouth Corporation does not own or lease any property in the State of New York.

11. BellSouth Corporation maintains no books or records in the State of New York.

12. BellSouth Corporation pays no taxes in the State of New York.

686542v1

13.     BellSouth Corporation is a holding company that does not provide services or send bills to any customers, and therefore does not and has never collected any federal excise tax from any person in New York or anywhere else in the country.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August ___6___, 2007.

James W. Lacy, Jr.

Sworn and Subscribed to me:

Notary Public
My Commission Expires:

Notary Public, DeKalb County, Georgia
My Commission Expires Sept. 1, 2007.

686542v1

3 of 3

**EXHIBIT C**

**E-mail from Paul Drummond to Christopher Neufeld (Nov. 22, 2006)**

```
From:          DRUMMOND, PAUL A (Legal)
Sent: Wednesday, November 22, 2006 10:30 AM
To:   'crneufeld@gmail.com'
Subject:       Belloni case
```

Christopher,

Per our call, below is my contact information and that of the outside lawyers we will be using on the case.

As we also discussed, I would like you to provide me with additional information on the two named-Plaintiffs who allegedly received long distance service from "AT&T Inc." or any entity that is allegedly a subsidiary of or affiliated with AT&T Inc. so that I can attempt to verify whether they are or ever have been customers.  Specifically, with respect to named-Plaintiffs Colleen Elvin (para. 18 of Complaint) and Shellyann Lewis (para. 19 of complaint), can you provide me with the following information:
1.  Exact name and spelling of the customer as provided to the long distance provider.
2.  Customer's billing address and address where the service was provided (if different).
3.  Telephone number utilized for the long distance service.
4.  Date of service, including termination date (if applicable).

We also discussed the fact that AT&T Inc. is not and never has been a long distance provider.  AT&T Inc. is a holding company and does not sell, market, or provide long distance or other telecommunications services.  It is not a proper party to this action.  Once you provide me with the information requested above, I can determine the name of the subsidiary or subsidiaries that may have provided long distance service to your clients.  If service can be verified, I will be asking you to voluntarily amend your Complaint to drop AT&T Inc. and replace it with the proper party or parties.  Of course, this is not a concession that any entity is liable to your clients and all procedural and substantive defenses and preserved and none are waived.

I look forward to working with you and your colleagues.

<<Sean Lev>>

<<Michael Kellogg>>

Paul A. Drummond
AT&T Services, Inc.
Senior Counsel - Litigation
175 East Houston Street, Fourth Floor
San Antonio, Texas 78205
Telephone:  (210) 351-5025
Facsimile:   (210) 351-3458

**E-mail from Christopher Neufeld to Paul Drummond (Dec. 7, 2006)**

```
From: Christopher Neufeld [mailto:crneufeld@gmail.com]
Sent: Thursday, December 07, 2006 8:24 AM
To: DRUMMOND, PAUL A (Legal)
Subject: Re: Belloni case - request of AT&T


Dear Mr. Drummond:

We have not forgotten about your request.  We are presently attempting to
finalize a broader issue with all defendants' legal counsel, which would
appear to be close to resolution, after which we shall address your request.

Sincerely,

Christopher R. Neufeld, Esq.
Law Offices of Kelechi O. Onyeobia, P.C.
Attorneys for the Plaintiffs
crneufeld@gmail.com
646-660-1964


On 12/5/06, DRUMMOND, PAUL A (SBCSI) <pd2786@att.com> wrote:
>
>        Christopher, what have you been able to determine regarding the
> issues raised in my 11/22/06 email, a copy of which I attach.
>
> Paul A. Drummond
> AT&T Services, Inc.
> Senior Counsel - Litigation
> 175 East Houston Street, Fourth Floor
> San Antonio, Texas 78205
> Telephone:  (210) 351-5025
> Facsimile:  (210) 351-3458
```

**E-mail from Paul Drummond to Christopher Neufeld (Dec. 7, 2006)**

```
From: CARLOS, JANIE (Legal) [mailto:je2814@att.com] On Behalf Of DRUMMOND,
PAUL A (Legal)
Sent: Thursday, December 07, 2006 9:45 AM
To: Christopher Neufeld
Cc: Lev, Sean A.
Subject: RE: Belloni case - request of AT&T
```

I am aware of the discussions with other defendants regarding scheduling,
answer dates, etc.  However, I do not see why this should interfere with what
would seem to be a relatively simple task of determining the issues raised in
my email.  Obviously, the answers to my questions may have an impact on the
position we take in our responsive pleading.  So it is important that we
receive answers to my inquires as soon as possible.  I look forward to
hearing from you on these points as soon as possible.  Can you give me an
idea when you will be able to provide me with the requested information?

**E-mail from Christopher Neufeld to Paul Drummond (Jan. 17, 2007)**

From: Christopher Neufeld [mailto:crneufeld@gmail.com]
Sent: Wednesday, January 17, 2007 8:33 AM
To: DRUMMOND, PAUL A (Legal)
Subject: 06-cv-11459-DAB Belloni et al. v. Verizon Communications Inc.
et al. - Information re: AT&T customers/plaintiffs


Dear Mr. Drummond:

Pursuant to the parties having entered upon the agreed stipulation and order
in the above-referenced action, and pursuant to your earlier request for
identification of the AT&T customers/plaintiffs prior to the commencement of
the discovery phase of the instant proceedings, please be advised that
plaintiff Colleen Elvin resides at 2763 Reservoir Avenue, Apt. 2F, Bronx, New
York 10468 and plaintiff Shellyann Lewis resides at 2763 Reservoir Avenue,
Apt. 2R, Bronx, New York 10468.  For purposes of confirmation with your
records, please be advised that plaintiff Colleen Elvin's prior phone numbers
were 718-904-8174 and 718-563-2922.

Please be guided accordingly,

Christopher R. Neufeld, Esq.
Law Offices of Kelechi O. Onyeobia, P.C.
Attorneys for the Plaintiffs
crneufeld@gmail.com