## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | : | |
| | : | MDL Docket No. 1798 |
| LONG-DISTANCE TELEPHONE SERVICE | : | |
| FEDERAL EXCISE TAX REFUND | : | Master File: 07-mc-0014 (RMU) |
| LITIGATION | : | |
| | : | Member Case: 07-cv-0051 (RMU) |
| This Document Relates To | : | |
| *Cohen v. United States* | : | |

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION TO DISMISS

## I.    INTRODUCTION

When the taxman takes too much, how must he disgorge his unlawful gains?  This is the question confronting the court in the plaintiff's amended complaint bringing an Administrative Procedure Act ("APA") claim challenging the IRS's refund mechanism for a now-defunct levy of telephone excise taxes.  The defendant seeks dismissal of the APA claim on the grounds that (1) the plaintiff lacks standing, (2) the IRS's action is committed to agency discretion, (3) the IRS enjoys sovereign immunity and (4) the IRS has taken no final action for which there is no other adequate remedy.  Because none of these arguments withstands inspection, the court denies the defendant's motion to dismiss the claim, permitting further review to proceed on the merits.

## II.    BACKGROUND

### A.    Factual History

For nearly forty years, § 4251 of the Internal Revenue Code empowered the IRS to collect a three-percent excise tax on long-distance telephone calls.  *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 374-75 (D.C. Cir. 2005).  Two years ago, in a span of decisions separated

by not more than twelve months, five federal appeals courts unanimously declared the IRS's

reliance on § 4251 to be unlawful. *Reese Bros., Inc. v. United States*, 447 F.3d 229, 234 (3d Cir.

2006); *Fortis, Inc. v. United States*, 447 F.3d 190, 190 (2d Cir. 2006); *Nat'l R.R. Passenger*

*Corp. v. United States*, 431 F.3d 374, 379 (D.C. Cir. 2005); *OfficeMax, Inc. v. United States*, 428

F.3d 583, 600 (6th Cir. 2005); *Am. Bankers Ins. Group, Inc. v. United States*, 408 F.3d 1328,

1338 (11th Cir. 2005).

The IRS heeded this juridical clarion and, on May 25, 2006, announced that it was

discontinuing collection of the tax effective July 31, 2006. I.R.S. Not. 2006-50, 2006-25 I.R.B.

1141 § 4(c) (May 26, 2006) ("Notice procedure"). The Notice also announced the

implementation of a refund procedure for taxes paid between February 28, 2003 and August 1,

2006, by which taxpayers would file claims on their federal income tax returns, requesting either

a full refund (provided they retained substantiating records) or a "safe harbor" amount (ranging

between thirty and sixty dollars). Def.'s Mot. to Dismiss Pl.'s APA Claim, ("Def.'s Mot.") at 2-

3. In addition to the above, a taxpayer seeking a refund would have to withdraw any pending

refund request from a telecommunications provider (the collector of the tax) or, if he were

seeking a safe-harbor amount refund, withdraw any pending refund request from the IRS. Def.'s

Reply at 2.

## B.    Procedural History

The plaintiff, Neiland Cohen, is a resident of Wisconsin[1] who (having allegedly

---

[1]    Originally established in the Eastern District of Wisconsin, venue in this matter shifted
to the District Court for the District of Columbia pursuant to an order from the Judicial
Panel on Multidistrict Litigation consolidating this and three other cases. Transfer Order
(Dec. 28, 2006); *accord* 28 U.S.C. § 1407.

purchased long-distance telephone services while the tax remained effective and submitted an administrative refund claim to the IRS) filed a suit on his own behalf and that of similarly situated taxpayers on November 29, 2005 for an injunction against enforcement of the excise tax. Compl. for Permanent Inj. and Req. for Class Certification ¶¶ 5, 24. After the IRS allegedly denied[2] his administrative request for a refund, the plaintiff filed his first amended complaint adding a monetary claim for a refund on February 6, 2006. Am. Compl. for Perm. Inj. Relief and Damages, and Req. for Class Certification ¶¶ 16-19. The IRS's acquiescence on May 25, 2006 to the judgment of the appellate courts mooted the plaintiff's request for injunctive relief, spurring him to again amend his complaint to add a claim for judicial review of the IRS's refund mechanism under the Administrative Procedure Act. Second Am. Compl. for Inj., Decl. J., and Monetary Relief, and Req. for Class Certification ("Am. Compl.") ¶¶ 26-29; 5 U.S.C. § 702. At this time, the plaintiff also updated his refund request to include the period from July 1, 2002 through July 31, 2006 (the last day the tax was collected), reflecting a total refund claim of $54.84. Am. Compl. ¶¶ 22-25.

In his APA claim, the plaintiff alleges that the refund mechanism constitutes final agency action that "arbitrarily, unreasonably, and unlawfully limits restitution of the funds unlawfully exacted" in that it: (a) limits restitution to funds exacted after February 28, 2003 rather than July 1, 2002; (b) requires the submission of requests on tax returns; (c) provides for "safe harbor" amounts that "fall materially below the likely entitlement of most potential claimants" and

---

[2]     Whether or not the IRS formally denied the plaintiff's refund request or merely deferred its decision is the question lying at the heart of another motion to dismiss, targeted on the plaintiff's refund claim rather than his APA claim. Def.'s Req. for Dismissal of Pl.'s Refund Claim for Lack of Jurisdiction, at 7. The court need not address this question to resolve the instant motion.

"conditions claims for larger amounts upon ability to produce documentation that phone-users could not be expected to retain"; (d) conditions use of the refund mechanism on the withdrawal of a prior refund request; and (e) "arbitrarily and unreasonably disregards approaches that would increase the degree of reparation achieved without creating any risk of global overpayment." Am. Compl. ¶¶ 26-28.  The plaintiff asserts that "these and other deficiencies . . . will improperly interfere with judicial consideration of appropriate class remedies and limit the restitution effected by the government to a minor fraction of the total amount unlawfully exacted."  *Id.* ¶ 29.

While the plaintiff's underlying claim for a full refund from the defendant of "not less than $54.84" and his request for class certification remain outstanding, *id.* ¶¶ 22-25, the instant motion does not encompass them.  The instant motion seeks dismissal of only the APA claim, contending that the court lacks subject-matter jurisdiction over it because the plaintiff lacks standing, the IRS's action is committed to agency discretion and the IRS enjoys sovereign immunity.  Def.'s Mot. at 5.  The defendant also maintains that the plaintiff has failed to state a claim, arguing that the IRS has not taken any final action for which there is no other adequate remedy at law.[3]  *Id.* at 15.  It is to these arguments that the court now turns.

---

[3]     Because the absence of final agency action implicates the court's subject-matter jurisdiction, the movant should allege this deficiency in a 12(b)(1) motion, not a 12(b)(6).  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006) (ruling that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional"); *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (characterizing the issue of final agency action as a "jurisdictional question").  The court, therefore, construes this motion under the standards governing the former.  *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 909 n.3 (7th Cir. 2005).

### III.   ANALYSIS

#### A.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

As subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal*

*Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is not limited

to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C.

Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  When necessary, the court may

consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

      The level of scrutiny with which the Court examines the allegations in the complaint

that support a finding of jurisdiction, however, depends upon whether the motion to dismiss

asserts a facial or factual challenge to the court's jurisdiction.  *I.T. Consultants v. Pakistan*, 351

F.3d 1184, 1188 (D.C. Cir. 2003).  Facial challenges, such as motions to dismiss for lack of

standing at the pleading stage, "attack[ ] the factual allegations of the complaint that are

contained on the face of the complaint." *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C.

2003) (internal quotation marks and citation omitted). "If a defendant mounts a 'facial' challenge

to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true

the allegations in the complaint and consider the factual allegations of the complaint in the light

most favorable to the non-moving party." *Erby v. United States*, 424 F. Supp. 2d 180, 181

(D.D.C. 2006); *see also I.T. Consultants*, 351 F.3d at 1188.  The court may look beyond the

allegations contained in the complaint to decide a facial challenge, "as long as it still accepts the

factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug

Admin.*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  Here, because the motion to dismiss does not

dispute the underlying facts of the complaint, the defendant poses a facial challenge.

### C.    The Procedure for Challenging an Unlawful Federal Tax

Before treading into this jurisdictional maze, the court pauses to review the established

legal infrastructure for obtaining a tax refund.  At the outset, a taxpayer challenging a tax must

first file a refund claim with the IRS.  *See* I.R.C. § 7422(a) (providing that "[n]o suit or

proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until

a claim for refund . . . has been duly filed with the Secretary, according to the provisions of law

in that regard, and the regulations of the Secretary established in pursuance thereof").  The

Secretary by regulation requires that claims for refund:

> set forth in detail each ground upon which a credit or refund is claimed and facts
> sufficient to apprise the Commissioner of the exact basis thereof.  The statement of
> the grounds and facts must be verified by a written declaration that it is made under
> the penalties of perjury.  A claim which does not comply with this paragraph will not
> be considered for any purpose as a claim for refund or credit.

Treas. Reg. § 301.6402-2(b)(1).  The requirement for filing a proper refund claim "is designed

both to prevent surprise and to give adequate notice to the Service of the nature of the claim and

the specific facts upon which it is predicated, thereby permitting an administrative investigation

and determination."  *Computervision Corp. v. United States*, 445 F.3d 1355, 1363 (Ct. Fed. Cl.

2006) (citation omitted).  The claim must be filed timely: after the tax has been paid, *Rosenman*

*v. United States*, 323 U.S. 658, 658 (1945), but before the expiration of the time for filing, *United*

*States v. Dalm*, 494 U.S. 596, 602 (1990), which occurs "3 years from the time the [tax] return

was filed or 2 years from the time the tax was paid, whichever of such periods expires the later,"

I.R.C. § 6511(a).

As regards refund claims for the instant tax, prior to the issuance of Notice 2006-50

purportedly implementing the new tax-return-based refund mechanism, no official forms or

7

procedures facilitated the filing of an excise tax refund claim by an individual.  Indeed, the

bewildering sequence of tax code instructions available then read like a shaggy-dog story – the

frustrating punchline being that only the collectors of the tax (telecommunications providers)

were eligible for a refund.  *See* 26 C.F.R. § 301.6401-2 (c) (stating that all claims for refunding

of taxes shall be made on Form 843); IRS Instructions for Form 843, 1 (2005) (warning the

taxpayer, "do not file Form 843 to request . . . [a] refund relating to excise taxes reported on

Forms 11-C, 720, 730, or 2290," but do "[s]ee . . . Form 8849, Claim for Refund of Excise

Taxes"); IRS Instructions for Form 8849, 1 (2005) (advising the taxpayer, "**Caution: Do not** use

Form 843 to make adjustment to liability reported on Forms 720"; instead, "Use Schedule 6 for

claims . . . including refunds of excise taxes reported on Form 720") (emphasis in original); IRS

Instructions for Form 720, 14 (2005) (revealing that "[t]he person receiving the payment for

communications . . . services must collect and pay over the tax and file the return").

  If, despite the preceding, a claim is filed and the IRS denies it or withholds a response for

six months, a claimant may file a refund suit against the United States in the Federal Claims

Court or a federal district court.  I.R.C. § 7422(a); 28 U.S.C. § 1346(a).  In a refund suit, the

taxpayer must prove both the excessiveness of the assessment and the correct amount of any

refund to which she is entitled. *United States v. Janis*, 428 U.S. 433, 434 (1976).  When the claim

is filed within the three-year limitation period, "the amount of the credit or refund shall not

exceed the portion of the tax paid within the period, immediately preceding the filing of the

claim, equal to 3 years." I.R.C. § 6511(b)(2).  This is the only limit on recovery in a refund suit –

thus, "where the taxpayer timely files a tax return, pays the tax, files a timely administrative

claim, and then is assessed an additional tax, which the taxpayer pays . . . . a taxpayer . . . [need

not] exhaust his administrative remedies twice." *Keeter v. United States*, 957 F. Supp. 1160,

1163, 1165 (E.D. Cal. 1997). Simply stated, a refund may include additional taxes paid after the

filing of a refund claim, so long as the total does not exceed the portion of tax paid prior to the

administrative claim. *Id.* at 1164; *Lundy v. I.R.S.*, 45 F.3d 856, 858 (4th Cir. 1995).

### D. The Plaintiff Has Standing To Bring His APA Claim[4]

#### 1. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or

controversies. U.S. CONST. ART. III, § 2, cl. 1. These prerequisites reflect the "common

understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and

unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*,

94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing

standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v.*

*Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the

plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl.*

*Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual

---

[4]     As standing goes to the fundamental justiciability of the case under Article III of the U.S.
Constitution, the court resolves it as a threshold matter before resolving other
jurisdictional questions. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67
(1997). Of course, a court may address jurisdictional questions in whatever order it sees
fit. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (noting that "[i]t is
hardly novel for a federal court to choose among threshold grounds for denying audience
to a case on the merits").

allegations of injury resulting from the defendant's conduct will suffice. *Id.*

　　To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

　　The test for standing shifts focus when a plaintiff challenges an agency's failure to comply with a procedural requirement. *Fla. Audubon*, 94 F.3d at 664 (citing *Defenders of Wildlife*, 504 U.S. at 572 n.7). In such cases, as long as the procedural requirement is designed to protect a threatened, concrete interest of the plaintiff, the violation is sufficient to grant the plaintiff standing. *City of Waukesha*, 320 F.3d at 234. To ensure that the plaintiff's interest is more than a general interest common to all members of the public, however, the procedural-rights plaintiff must show "that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." *Id.* (citing *Florida Audubon*, 94 F.3d at 664).

　　If the plaintiff is suing under the APA, the plaintiff must show that the alleged injury falls

within the zone of interests that the statute on which the plaintiff bases the complaint seeks to protect. *Lujan*, 497 U.S. at 883; *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 900 (D.C. Cir. 1996).

### 2.    The Plaintiff Sufficiently Alleges that the Notice Procedure Injures Him

The defendant first argues that the plaintiff lacks standing because he has not alleged that he has or will use the Notice procedure to obtain a refund. Def.'s Mot. at 6. Without availing himself of the procedure, the defendant reasons, the plaintiff cannot allege injury because he has not shown himself "to be aggrieved by any final agency action either in the implementation of the regulation or in having any offers-in-compromise denied." *Id.* (quoting *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex. 2004)).

The plaintiff responds that the Notice procedure is "grotesquely unrealistic" because, on the one hand, it "would not allow him to claim the safe-harbor amount while reserving the right to maintain his refund suit and pursue the additional money he is owed through it," and, on the other hand, it "would [not] allow him to claim the full amount he is entitled to despite lacking the complete documentation that the Notice requires." Pl.'s Opp'n at 5, 6. Thus, he argues, the Notice procedure injures his economic interest in an expeditious, full refund even though he has not applied under the procedure nor does he intend to do so. Am. Compl. at ¶ 27.

The plaintiff's rebuttal is well founded. The IRS continues to deny to the plaintiff a benefit to which he is entitled: the refund of unlawfully extracted taxes. This injury is economic – therefore, concrete; as well as ongoing – therefore, actual and present, not conjectural or hypothetical. *See McKesson Corp. v. Div. of Alcohol Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18, 49 n.34 (1990) (endorsing state supreme court's reasoning that

11

the party who bears the burden of a wrongfully extracted tax has standing to demand a refund);

*Constellation Energy Commodities Group, Inc. v. Fed. Energy Reg. Comm'n*, 457 F.3d 14, 20

(D.C. Cir. 2006) (concluding that agency action reducing the likelihood of a full recovery of a

refund is an immediate injury) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677,

682 (7th Cir. 1992) (reasoning that a victim of an "insured's tort" has "legally protectable

interest" in tortfeasor's policy even before he has obtained judgment upon claim)); *Salt Lake City*

*Corp. v. Property Tax Div. of Utah State Tax Comm'n*, 979 P.2d 346, 351 (Utah 1999) (ruling

that continuing denial of a benefit to which a party is entitled provides a basis for standing to

obtain judicial review of an administrative rule).  The plaintiff's claim that he would be "directly

and immediately better off – in the emphatically concrete sense that . . . he would have more

money in his pocket sooner – if he could obtain relief through the Notice procedure . . . without

sacrificing a major portion of his claim," Pl.'s Opp'n at 5, is "[n]o reasonable mind could doubt .

. . a judicially cognizable injury sufficient to satisfy the injury in fact test for Article III standing,"

*see Ontaio Forest Inds. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1323-24 (Ct. Int'l Trade

2006) (recognizing that delay of refund "deprives Plaintiffs of the time-value of money . . . and

may . . . deprive Plaintiffs of money") (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287

(1997) (determining that an imposition of a tax was "plainly" a cognizable injury)).

     Just as the plaintiff clearly has an ongoing injury, so too his claim is not deficient merely

for failure to apply for a refund under the Notice procedure.  The plaintiff is not seeking to use

the Notice procedure; rather, he seeks only to enforce regulations that apply to it.  *See Highland*

*Petroleum, Inc. v. Dep't of Energy*, 798 F.2d 474 (Temp. Emer. Ct. App. 1986) (finding that the

appellant had standing to challenge the Department of Energy's handling of refunds on an

allegation that the agency exceeded its statutory and regulatory authority, despite the fact that the appellant was not a party to the consent order governing distribution of refunds). The defendant confuses the doctrine requiring exhaustion of administrative remedies with that of constitutional standing: failure to apply for a refund through the Notice procedure only implicates the former. *See Consolidated Edison Co. of New York, Inc. v. Bodman*, 473 F. Supp. 2d 1, 3 (D.D.C. 2007) (citing *Consolidated Edison Co. of New York, Inc. v. Richardson*, 233 F.3d 1376, 1384 (Fed. Cir. 2000) (holding that crude oil consumers that were claimants to pool of funds collected by Department of Energy from crude oil producers and suppliers did not forfeit their challenge to the amount of refund awarded by DOE to a third-party claimant even though they failed to intervene while DOE was deciding the third-party claimant's award").

Persistent, the defendant analogizes the instant APA claim with that denied in *Brooks v. Snow*, 313 F. Supp. 2d 654 (S.D. Tex. 2004). There, the plaintiffs sought a declaration from the court that Treasury Regulation 26 C.F.R. § 301.722-1 (listing the grounds authorizing the IRS to settle a tax case) was inconsistent with congressional intent, because the regulation omitted delays caused by the IRS in determining tax liability. *Id.* at 658-59. The court dismissed their complaint, explaining that they had not "allege[d] they ever submitted any offers-in-compromise and, therefore, they have not shown themselves to be aggrieved by any final agency action either in the implementation of the regulation or in having any offers-in-compromise denied. *Id.* at 659. They lacked standing because they posited a "highly speculative and uncertain" injury "based on the Secretary not having written the regulation in the way they believe it should have been written." *Id.*

*Brooks*, however, is not controlling and, in any event, distinguishable. First, unlike the

plaintiffs in *Brooks*, this plaintiff has alleged that he applied for a refund and was denied. Am.

Compl. ¶ 22. He hasn't reapplied under the Notice procedure, but the law does not require him

to reapply every time the IRS changes its mind or superceding case law appears. *See Starkey v.*

*United States*, 635 F. Supp. 1007, 1009 (W.D. Ark. 1986) (holding that a second refund claim

based on a change in the law does not constitute a different claim and that Congress did not

intend for taxpayers to file successive claims based on the same facts); *Scully v. United States*, 70

F. Supp. 239, 255 (Ct. Fed. Cl. 1947) (holding that a subsequent refund request on reassessed

taxes was unnecessary as the government already had notice of the plaintiff's claim). Second,

and most crucially, this plaintiff launches his APA claim from an already-established injury – the

unlawfully exacted taxes. In *Brooks*, the plaintiffs speculated that had the regulation been written

as they would have liked, their tax liability would have been reduced. *Brooks*, 313 F. Supp. 2d at

660-62. The standing doctrine exists to forestall precisely this sort of behavior: a plaintiff

bootstrapping his way into a federal court with a hypothesized injury. *See Ala. Mun. Distribs.*

*Group v. Fed. Energy Regulatory Comm'n*, 312 F.3d 470, 475 (D.C. Cir. 2002) (warning that

"[t]o create standing out of [an injury] that *would* flow from granting standing is to create it ex

nihilo"). To compare this plaintiff's economic injury, established by multiple appellate courts

and the admission of the defendant, to the *Brooks* plaintiffs' injury, established by solipsistic and

academic animadversion, is akin to comparing the zebra to the unicorn – concluding that the

former must not exist because, like the latter, it too is a horse.

    The defendant next argues that, even were the plaintiff to use the Notice procedure, he

would still lack standing because the procedure is "simply an offer to taxpayers of an alternate

means of obtaining [a] refund[]." Def.'s Mot. at 8. According to the defendant, the conditions of

the procedure do not impinge upon taxpayer rights because (1) the IRS's power to compromise (settle) a refund claim is discretionary and (2) Congress has already provided the legal remedy of a refund suit to those who make a request and are denied or ignored by the IRS. *Id.* Therefore, as "taxpayers cannot possibly have a legally protected interest to *receive* duplicative refunds, so they cannot possibly have a legally protected interest to *request* duplicative refunds." Def.'s Reply at 3 (emphasis added).

But this objection misses the mark. At this stage of the proceedings, the plaintiff need not defend the merits of his claim but need only show that the procedural requirement he alleges the IRS violated is designed to protect a threatened, concrete interest. *City of Waukesha*, 320 F.3d at 234. When a plaintiff shows that the procedural protection he was denied was connected to the substantive result that followed, his burden is discharged. *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002). This is so because the APA essentially presumes that an agency's failure to follow lawful procedures impacts substantive results. *Id.* at 95 (observing that the APA "would be a dead letter" if a party claiming the deprivation of a procedural right had to show that had it exercised that right the agency would have acted differently).

As a final sally, the defendant argues that even assuming that the plaintiff is injured by the claim-withdrawal condition of the Notice procedure, the standing that that injury bestows does not extend "*carte blanche* to attack[ing] totally unrelated requirements" such as the safe harbor levels, the length of the recovery period and the use of tax forms. Def.'s Reply at 3.

Factual and legal confusion both riddle this objection. As a factual matter, the defendant ignores the face of the plaintiff's second amended complaint, baldly identifying as arbitrary,

15

unreasonable and unlawful *all* the restrictive conditions of the Notice procedure because they

"limit the restitution effected by the government to a minor fraction of the total amount

unlawfully exacted." Am. Compl. ¶¶ 27, 29. As a legal matter, once standing is established on a

particular injury caused by the defendant and redressable in court, standing is established for the

entire applicable claim. *See Sierra Club v. Morton*, 405 U.S. 727, 737 (1972) (stating that "the

fact of economic injury is what gives a person standing to seek judicial review under the [APA],

but once review is properly invoked, that person may argue the public interest in support of his

claim that the agency has failed to comply with its statutory mandate").

The two final elements of standing (causation and redressability) are not challenged and

are readily apparent. *See Sugar Cane Growers*, 289 F.3d at 94 (presuming causation and

redressability where procedural violation is connected to substantive result). Having cut through

the justiciability tangle, the court may now unravel the knotty quandary of whether the Notice

procedure is, nonetheless, committed to agency discretion.

### E. The Refund Request Procedure is Not Committed to Agency Discretion

The defendant attempts to insulate the Notice procedure from judicial review by

characterizing it as part and parcel of the IRS's authority to compromise cases, for which it

purportedly possesses unlimited discretion. Def.'s Mot. at 9. The defendant points to I.R.C. §

7122(a) as its authority for issuing the Notice procedure, Def.'s Reply at 4; the provision reads:

"The Secretary may compromise any civil or criminal case arising under the internal revenue

laws prior to reference to the Department of Justice for prosecution or defense." I.R.C. §

7122(a). The defendant thus frames the Notice procedure as "an offer by the IRS to compromise

its potential liability for any potential . . . overpayments." Def.'s Reply at 5. In light of the

16

absence of any "meaningful standard by which a court could review the exercise of [the agency's] discretion," Def.'s Mot. at 10, and Congress's choice of precatory statutory language ("*may* compromise"), the court, supposedly, cannot review the defendant's decision without intruding upon administrative prerogative.

A court may not review an agency action where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  The APA's ban on judicial review of such actions is jurisdictional.  *Balt. Gas & Elec. Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 456, 459 (D.C. Cir. 2001) (holding that "[t]he ban on judicial review of actions 'committed to agency discretion by law' is jurisdictional"); *Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth.*, 128 F.3d 751, 753 (D.C. Cir. 1997) (noting that the APA provides no jurisdiction when "statutes preclude judicial review").

"[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  *Chaney*, 470 U.S. at 831.  This presumption of unreviewability applies because an agency decision not to enforce

> often involves a complicated balancing of a number of factors which are peculiarly within its expertise . . . including whether a violation has occurred, . . . whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.

*Id.*; *accord Nat'l Wildlife Fed'n v. Envtl. Prot. Agency*, 980 F.2d 765, 772-73 (D.C. Cir. 1992) (quoting *id.*).  Moreover, the agency "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Shell Oil Co. v. Envtl. Prot. Agency*, 950 F.2d 741, 764 (D.C. Cir. 1991) (quoting *Chaney*, 470 U.S. at 831-32).  That said, the

presumption may be overcome

> (1) where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers; (2) where the agency refuses to institute proceedings based solely on the belief that it lacks jurisdiction; and (3) where the agency has conspicuously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.[5]

*Balt. Gas & Elec.*, 252 F.3d at 460 (quoting *Chaney*, 470 U.S. at 833 & n.4). Courts, therefore, must carefully examine the statute on which the claim is based. *Webster v. Doe*, 486 U.S 592, 600 (1988). Because of the presumption of judicial review, the agency-discretion exception of the APA applies only in "rare instances." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation omitted).

That the Notice procedure is not a compromise power committed entirely to the discretion of the IRS is a fact evident from the well-trod path of case law establishing that the courts do review the refund conditions established by the Treasury Secretary. Treasury Regulations, such as the Notice procedure, are calculated "to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims." *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 297 (1940). Nevertheless, "insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of Treasury officials." *Id.* at 296. Thus, the agency's authority is not absolute:

> Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a

---

[5]    In *Chaney*, the Court endorsed only the first of these three exceptions but noted the possibility of the other two, "express[ing] no opinion on whether such decisions would be unreviewable" but "not[ing] that in those situations the statute conferring authority on the agency might indicate that such decisions were not committed to agency discretion." *Balt. Gas & Elec. Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 456, at 460 n.2 (D.C. Cir. 2001) (quoting *Chaney*, 470 U.S. at 833 n.4).

practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness.

*Id.* at 297.

One such example of fairness appears in the court-developed doctrine of "substantial variance." Under that doctrine, courts routinely ignore the pronouncement that "a claim which does not comply with [treasury regulations] will not be considered for any purpose as a claim for refund or credit." C.F.R. § 301.6402-2(b)(1); *see Computervision*, 445 F.3d at 1364 (recounting the legal fictions denominated as "substantial variance" – implied claim, agency waiver, general claim and germane claim – that the courts have constructed to reverse an agency's decision denying a refund claim).

Even were the above insufficiently persuasive, the observation remains that the Notice procedure resembles a procedure-bound rule more than it does a discretionary enforcement decision. In contradistinction to an act of prosecutorial discretion, an agency-promulgated rule is reviewable. 5 U.S.C. § 701-706; *Nat'l Ass'n of Home Builders v. Army Corps of Eng'rs*, 417 F.3d 1272, 1284-86 (D.C. Cir. 2005). The APA defines a "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). By explicitly announcing that the IRS will, pursuant to the holding of the appellate courts, no longer enforce the telephone excise tax, Notice 2006-50 (in which the Notice procedure is promulgated) assumes the form of a rule. *See Int'l Union v. Brock*, 783 F.2d 237, 245-46 (D.C. Cir. 1986) (distinguishing an agency's announcement of a new interpretation of a statute from those decisions that do not affect "underlying legal or factual issues").

19

Because the subject of review is a rule rather than a prosecutorial decision, the protections afforded the defendant in the latter are not available. Prosecutorial discretion represents a balanced judgment on the existence of a violation, allocation of agency resources, likelihood of success and fit with overall policy. *Chaney*, 470 U.S. at 831. These issues are not at stake in a refund claim, as compromising one's own liability differs categorically from accepting a defendant's offer-in-compromise of his own liability. *See id.* (describing the agency enforcement discretion based on the decision of whether to prosecute an action). They, therefore, do not weigh in favor of recognizing unreviewable agency discretion.

In a collateral consequence of Notice 2006-50, the IRS has unmistakably cabined (limited) its discretion. An agency decision that narrowly cabins administrative discretion rises to the level of a substantive, legislative rule. *Comty. Nutrition Inst. v. Young*, 88 F.2d 943, 948 (D.C. Cir. 1987) (internal quotation marks and citations omitted). Treasury regulations permit the IRS to compromise a case when there is either: "[d]oubt as to liability"; "[d]oubt as to collectibility"; or compromise will "[p]romote effective tax administration." 26 C.F.R. § 301.7122-(b). Through Notice 2006-50, the IRS has, by adopting a substantive interpretation of the excise tax collection statute, admitted its liability for the improperly collected long distance excise taxes as to all taxpayers. *See* Notice 2006-50 § 1(a) (announcing that IRS will follow the holding of appellate courts that the collection of the long-distance telephone tax is without statutory authority); *cf. Ass'n of Irritated Residents v. Envtl. Prot. Agency*, No. 05-117, slip op. at 14 (D.C. Cir. July 17, 2007) (concluding that EPA did not cabin its discretion because decision to abate enforcement (1) did not reflect a "substantive interpretation" of a statute and (2) applied only to individual regulated entities). The IRS has, rather clearly, conceded that it will not

prosecute, fine or seek to other sanction individuals who have not paid the excise tax.  Such
actions do not betoken an unlimited prosecutorial discretion.

 With the question of agency discretion resolved in the plaintiff's favor, the court can
consider whether the Notice procedure constitutes final agency action for which there is no other
adequate legal remedy.

**F.    The Notice Procedure Is Final Agency Action for Which
There Is No Other Adequate Legal Remedy**

 The defendant argues that the Notice procedure is not final agency action because it does
not determine rights or obligations from which legal consequences will flow.  Def.'s Mot. at 16.
The procedure, the defendant maintains, does not alter federal tax law but merely offers a
relatively simple process by which to obtain a refund for a particular type of tax.  *Id.* (claiming
that "[t]axpayers are under no obligation to use the Notice procedure, and the procedure does not
affect their existing rights to obtain legal relief").

 Generally, for a court to have jurisdiction over claims seeking judicial review of an
agency action under the APA, it must determine that the action is final.  *Cobell v. Norton*, 240
F.3d 1081, 1095 (D.C. Cir. 2001); *see also Ticor Title Ins. Co. v. Fed. Trade Comm'n*, 814 F.2d
731, 746 n.2 (D.C. Cir. 1987) (noting that the finality requirement also applies to "agency action
made reviewable by statute").  A final agency action "(1) 'marks the consummation of the
agency's decision making process – it must not be of a merely tentative or interlocutory nature';
and (2) the action 'must be one by which rights or obligations have been determined or from
which legal consequences will flow.'"  *Domestic Secs. v. Secs. & Exch. Comm'n*, 333 F.3d. 239,
246 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).  A court therefore
must consider "whether the agency's position is definitive and whether it has a direct and

21

immediate effect on the day-to-day business of the parties." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

The defendant's own representations belie his argument. It eludes the court's comprehension how the Notice procedure could have no effect on the law, as the defendant insists, and yet, also as the defendant insists, be the mandatory format for administrative refund claims. *See* Notice Procedure 2006-50 § 5(a)(2) (declaring that tax refund requests must follow the Notice procedure or they will not be processed). Neither party disputes that the Notice procedure purports to set the rights and obligations attendant to submitting a refund claim. The legal consequences flowing therefrom are substantial: no less than the loss of the right to file a refund suit in court should a claimant fail to abide by the Notice procedure. *See* I.R.C. § 7422(a) (precluding a refund suit where taxpayer has not filed a prior refund claim with the IRS consistent with IRS regulations).

As a back-up argument, the defendant proposes that "an adequate remedy already exists under the time-honored, tax-refund-suit procedure." Def.'s Mot. at 15. The cases cited for this proposition are inapposite because they discuss the Anti-Injunction Act rather than the APA. *See South Carolina v. Regan*, 465 U.S. 367, 374-76 (1984) (holding that the Anti-Injunction Act did not bar South Carolina's intergovernmental immunity challenge against Tax Equity and Fiscal Responsibility Act of 1982); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974) (involving the application of the Anti-Injunction Act to ruling-letter program of the IRS).

Apposite law indicates that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action"; thus, § 704 "does not provide additional judicial remedies in situations where the Congress has provided special and adequate

review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Nevertheless, the

limitation set forth in § 704 "should not be construed to defeat the central purpose of providing a

broad spectrum of judicial review of agency action." *Id.*

Here, however, there is no legal method to review the Notice procedure other than an

APA action. Admittedly, the plaintiff could file a refund claim and, if his full refund were

denied, file a refund suit – but this would merely enable him to challenge the IRS's final

determination regarding his monetary claim, not the procedure itself. *See Jackson Square

Assocs. v. Dep't of Hous. & Urban Dev.*, 869 F. Supp. 133, 140 (W.D.N.Y. 1994) (concluding

that judicial review was necessary because the plaintiff's APA claim sought prospective and

declaratory relief requiring court to review agency's interpretation of statutes and regulations, not

merely issue a monetary judgment, which remedy was provided elsewhere).

Moreover, it is unclear what procedure governs refund claims not filed on 2006 tax

returns; i.e., the IRS offers no guidance to taxpayers whose excise tax claims are not yet time

barred by the three-year limitations period but who did not file their refund claims on 2006 tax

returns. If it is the IRS's position that it will not consider any newly-filed claims to be refund

requests, then such taxpayers could not satisfy the jurisdictional prerequisites for a refund suit.

They would, thus, lack an adequate legal remedy. I.R.C. § 7422(a); C.F.R. § 301.6402-2(b)(1)

(warning that "[a] claim which does not comply with [Treasury Regulations] will not be

considered for any purpose as a claim for refund").

In sum, the defendant has failed to show that an otherwise adequate legal remedy exists

barring the plaintiff's APA claim. With § 704 now addressed, the court's review progresses to

and ends at § 702, the APA provision governing waiver of sovereign immunity.

23

### G.    The IRS Does Not Enjoy Sovereign Immunity

The defendant contends that because the plaintiff did not seek a refund under the Notice

procedure he did not exhaust his administrative remedies; therefore, waiver is inappropriate.

Def.'s Mot. at 14.  The defendant also argues (referring to its argument in its pending motion to

dismiss the plaintiff's refund claim) that, if the court has no jurisdiction over the plaintiff's

refund claim because he did not wait for a decision within six months before filing suit, then

there has been no waiver of sovereign immunity.  Def.'s Mot. at 14 (referring to Def.'s Req. for

Dismissal of Pl.'s Refund Claim for Lack of Jurisdiction at 4-5).

Under the doctrine of sovereign immunity, the United States government is immune from

suit, except when it consents to be sued.  *Honda v. Clark*, 386 U.S. 484, 501 (1967); *United*

*States v. Testan*, 424 U.S. 392, 399 (1976).  Sovereign immunity acts as a jurisdictional bar,

disallowing courts from adjudicating claims against the government.  *United States v. Mitchell*,

463 U.S. 206, 212 (1983).  The government can only be sued when it explicitly waives

immunity, and the waiver must appear on the face of the statute.  *Dep't of the Army v. Fed. Labor*

*Relations Bd.*, 56 F.3d 273, 277 (D.C. Cir. 1995); *Testan*, 424 U.S. at 399.

The waiver of sovereign immunity under the APA provides that "[a]n action in a court of

the United States seeking relief other than money damages and stating a claim that an agency or

an officer or employee thereof acted or failed to act in an official capacity . . . shall not be

dismissed nor relief therein be denied on the ground that it is against the United States."  5

U.S.C. § 702.  Section 702 cautions, however, that "[n]othing herein . . . confers authority to

grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief

which is sought."  *Id.*  Thus, "[t]he APA excludes from its waiver of sovereign immunity . . .

24

claims for which an adequate remedy is available elsewhere." *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1993).

The defendant's first sovereign immunity argument raises the same issues (standing and adequate remedy at law) that the court disposed of above. Without repeating itself, the court rejects the defendant's arguments again. As for the defendant's second argument, the court stays its hand from disposing of the motion to dismiss the refund claim just yet, but it may observe that, even if the defendant is correct that the refund claim is precluded, that has no bearing on the viability of the APA claim. The question of the propriety of waiver vis-a-vis the APA claim is orthogonal to waiver vis-a-vis the refund claim. *See Transohio*, 967 F.2d at 607 (describing waiver of sovereign immunity as evaluated on a claim-by-claim basis).

## IV.    CONCLUSION

For the reasons stated herein, the court denies the defendant's motion to dismiss. An order consistent with this memorandum opinion is separately and contemporaneously issued this 10th day of August 2007.

RICARDO M. URBINA
United States District Judge